**PERRY, Appellee,**

v.

**LTV STEEL COMPANY, Appellant.**

[Cite as *Perry v. LTV Steel Co.* (1992), 84 Ohio App.3d 670.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61003.

Decided Oct. 19, 1992.

*John T. Price,* for appellee Bobby Lee Perry.

*Aubrey B. Willacy* and *Sherri L. Neiding,* for appellant.

*Lee Fisher,* Attorney General, and *Fred J. Pompeani,* Assistant Attorney General, for appellee Bureau of Workers' Compensation.

DAVID T. MATIA, Chief Justice.

Defendant-appellant, LTV Steel Co., appeals from a judgment rendered by the Cuyahoga County Court of Common Pleas which allowed the plaintiff-appellee, Bobby Lee Perry, to participate in the Worker's Compensation Fund for injuries which were sustained while in the course and scope of employment. The appellant's appeal involves the issues of the trial court's denial of the appellant's motion for a directed verdict and motion to dismiss, the trial court's refusal to allow a trial before a jury, the award of attorney fees, and the taxation as court costs of deposition expenses and expert witness fees.

The appellant's appeal is well taken in part.

## I.  THE FACTS

### A.  THE ACCIDENT SUFFERED BY THE APPELLEE

On March 31, 1986, the appellee was employed by the appellant as a "tar chaser" in a coke processing steel plant which was located at Independence Road, Cleveland, Ohio. The appellee's responsibilities as a tar chaser involved the clearing of tar from coke ovens, which necessitated the traversal of five flights of stairs. While performing his duties, the appellee caught his shoe on a Larry-car rail which was located at ground level. As a result, the appellee fell to the ground but was able to break his fall by extending his arms. The appellee immediately experienced pain in his back and dizziness. Following the fall, the appellant attempted to climb a flight of stairs, at which time he completely lost consciousness and fell a second time to the bottom of the stair landing. Upon discovery by a supervisor, the appellee was transported to St. Vincent Charity Hospital and treated for pain in his upper back, lower back and right leg.

### B.  THE APPELLEE IS ALLOWED TO PARTICIPATE IN THE WORKERS' COMPENSATION FUND

On June 16, 1987, the Industrial Commission of Ohio issued an order which affirmed the finding and order of the Cleveland Regional Board of Review to allow the appellee to participate in the Workers' Compensation Fund for injuries sustained while in the course and scope of employment. On August 21, 1987, the appellant appealed the order of the Industrial Commission of Ohio to the Cuyahoga County Court of Common Pleas pursuant to R.C. 4123.519.

### C.  NONJURY TRIAL OF APPELLEE'S RIGHT TO PARTICIPATE IN THE WORKERS' COMPENSATION FUND

On November 13, 1989, a nonjury trial was commenced with regard to the right of the appellee to participate in the Workers' Compensation Fund. On May 24,

1990, the trial court rendered a judgment which allowed the appellee to participate in the Workers' Compensation Fund.

On June 6, 1990, the appellant filed a request for the trial court to issue findings of fact and conclusions of law as provided for by Civ.R. 52. On November 27, 1990, the trial court journalized a judgment entry which approved and adopted the proposed findings of fact and conclusions of law submitted by the appellee.

## D. THE APPELLANT'S APPEAL

On December 13, 1990, the appellant filed a notice of appeal.

## II. THE FIRST ASSIGNMENT OF ERROR

The appellant's initial assignment of error is that:

"The trial court committed error prejudicial to defendant-appellant, LTV Steel Company, by overruling said defendant's motion for dismissal upon the conclusion of plaintiff's evidence because plaintiff failed to present any expert medical testimony upon the determinative medical-fact issue of whether a proximate causal relationship existed between (1) plaintiff's non-injurious tripping over a 'Larry-car' rail, and (2) his subsequent loss of consciousness which caused him to fall down a flight of stairs."

## A. ISSUE RAISED: FAILURE OF APPELLEE TO ESTABLISH PROXIMATE CAUSE OF HIS INJURIES REQUIRED GRANTING OF APPELLANT'S MOTION TO DISMISS

The appellant, through its first assignment of error, argues that the trial court erred by denying the appellant's motion to dismiss, which was made at the close of the appellee's case-in-chief. Specifically, the appellant argues that the failure of the appellee to present expert medical testimony at trial with regard to the issue of whether a proximate causal relationship existed between the appellee's initial fall over the Larry-car rail and the appellee's subsequent loss of consciousness and second fall required the granting of the motion to dismiss.

The appellant's first assignment of error is not well taken.

## B. THE TESTIMONY ADDUCED AT TRIAL WITH REGARD TO PROXIMATE CAUSE

In the case *sub judice*, testimony with regard to the proximate cause of the appellee's injuries was adduced solely from the appellee. The appellee, through his testimony, described the events which culminated in the second fall down a flight of stairs:

"Q. Now you described to the Court that you were crossing a Larry car track?

"A. Yes.

"Q. Is this something like a railroad track?

"A. Exactly.

"Q. What happened?

"A. The right shoe of the metatarsal got hooked and I caught myself with my hands.

"Upon doing that, I collected myself up on my feet, walked around for a minute or two because I was really in a lot of pain and dizzy. I started to go ahead and proceed to walk it off.

"I went up this little landing here, proceeded up this stairwell to my other part of my job.

"I remember, maybe halfway up, I got real lightheaded and was in a lot of pain and, at that point, from there, all I know is I was at the bottom of the landing with my boss screaming in my face after that."

Thus, the appellee, through his testimony, established that the second fall down the flight of steps was the result of a continuing series of events which occurred immediately after the initial trip and fall over a Larry-car track. The appellant, however, argues that the testimony of the appellee, absent additional medical testimony from an expert witness, was not sufficient to establish a proximate causal relationship between the appellee's initial trip and fall over the Larry-car rail and the appellee's subsequent loss of consciousness and second fall down a flight of steps.

## C. TESTIMONY FROM A MEDICAL EXPERT AS TO PROXIMATE CAUSE IS NOT ALWAYS NECESSARY

█ Testimony from a medical expert is not always necessary to demonstrate the proximate cause of an employee's injuries. The Supreme Court of Ohio, in *Stacey v. Carnegie–Illinois Steel Corp.* (1951), 156 Ohio St. 205, 213, 46 O.O. 93, 97, 101 N.E.2d 897, 901, held that:

"There are two types of industrial injury cases, one in which the testimony of lay witnesses does have probative value in establishing the probability of proximate causal relationship between accident and resulting injury, and the other where the testimony of lay witnesses is without probative value to establish a proximate causal relationship between the injury and the result claimed and where medical testimony is absolutely essential to prove such relationship. Each case must be decided upon its own facts in reference to this question."

In addition, the Supreme Court of Ohio, in *White Motor Corp. v. Moore* (1976), 48 Ohio St.2d 156, 2 O.O.3d 338, 357 N.E.2d 1069, held at paragraph two of the syllabus that:

"Where the issue of causal connection between an injury and the specific subsequent physical disability involves questions which are matters of common knowledge, medical testimony is not necessary in order to submit the case to the jury."

Finally, the Supreme Court of Ohio, in *White,* opined that:

"This court is of the opinion that the instant claim falls within the language expressed by Stewart, J., in *Stacey v. Carnegie–Illinois Steel Corp.* (1951), 156 Ohio St. 205, at page 213 [46 O.O. 93, at page 96, 101 N.E.2d 897, at page 901], cited by both sides. Judge Stewart, in delineating under what circumstances expert medical testimony is necessary to submit a cause to a jury, stated as follows:

"The *Stacey* case involved a condition of bilateral cataracts alleged to have resulted from a small particle lodging in one eye.

"Succinctly stated, both cases relied on by appellant involved rather complicated medical problems, and were cases in which the testimony of medical witnesses was or would be preferred in order to better equip the jury for its determination. Such testimony would hardly seem necessary in a medical problem involving the presence or dimension of a bruise.

"*As a general rule of law involving complex medical problems, medical evidence is necessary to establish a direct or proximate causal relationship between an industrial accident and the resulting injury.* See *Fox v. Indus. Comm.* (1955), 162 Ohio St. 569 [55 O.O. 472, 125 N.E.2d 1]. However, as noted in the *Stacey* case, *supra,* there are two types of industrial injury cases. The instant case involves a 'bruise above the left patella' allegedly caused by a truck frame which fell from a dolly and struck the claimant with such force that he fell and was pinned beneath it. We submit that there is little if any medical complexity about this type of accident or injury. Further, to argue that there is a dispute as to the occurrence of the injury itself is a matter of credibility of witnesses, not scientific inquiry." (Emphasis added.) *Id.,* 48 Ohio St.2d at 159–160, 2 O.O.3d at 340, 357 N.E.2d at 1071–1072.

## D. TESTIMONY OF MEDICAL EXPERT WAS *NOT* REQUIRED IN INSTANT APPEAL

■ In the present appeal, the testimony of a medical expert was not required to establish the probability of a proximate causal relationship between the appellee's original trip and fall over the Larry-car track and the appellee's

subsequent loss of consciousness and resulting fall down a flight of steps. The appellee's loss of consciousness and second fall involved a matter within common knowledge of the ordinary person and did not require *complex* medical expert testimony. A person who trips, falls, becomes groggy and suffers immediate pain certainly can experience a sudden loss of consciousness. Clearly, the appellee demonstrated by a preponderance of the evidence that his injury arose out of and was received while in the course of his employment. Additionally, the appellee through his own testimony demonstrated a direct or proximate relationship which existed between his injury and his harm or disability. Thus, medical expert testimony was not necessary. *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 52 O.O.2d 76, 261 N.E.2d 114; *Hickman v. Ford Motor Co.* (1977), 52 Ohio App.2d 327, 6 O.O.3d 365, 370 N.E.2d 494.

Therefore, the trial court did not err as a result of denying the appellant's motion for a directed verdict and motion to dismiss, and the appellant's initial assignment of error is not well taken.

## III. THE SECOND ASSIGNMENT OF ERROR

The appellant's second assignment of error is that:

"The trial court committed error prejudicial to defendant-appellant, LTV Steel Company, by denying said defendant its constitutional and statutory right to a trial by jury despite defendant's having made demand therefor in accordance with Civil Rule 38(B)."

## A. ISSUE RAISED: TRIAL COURT IMPROPERLY DENIED APPELLANT'S RIGHT TO TRIAL BY JURY

■ The appellant, through its second assignment of error, argues that it was prejudiced by the refusal of the trial court to grant it a trial before a jury. Specifically, the appellant argues that it was denied both a constitutional and a statutory right to a trial by jury as a result of the trial court's failure to grant the appellant's request for a jury trial as made pursuant to Civ.R. 38.

The appellant's second assignment of error is well taken.

## B. THE DEMAND FOR A JURY TRIAL AND CIV.R. 38(B)

Civ.R. 38(B), which deals with a party's demand for a jury trial, provides that:

"(B) Demand. Any party may demand a trial by jury on any issue triable of right by a jury by serving upon the other parties a demand therefor at any time after the commencement of the action and not later than fourteen days after the service of the last pleading directed to such issue. Such demand shall be in writing and may be indorsed upon a pleading of the party. If the demand is

indorsed upon a pleading the caption of the pleading shall state 'jury demand endorsed hereon.' In an action for appropriation of a right of way brought by a corporation pursuant to Article XIII, Section 5, of the Ohio Constitution, the jury shall be composed of twelve members unless the demand specifies a lesser number; and in the event of timely demand by more than one party in such action the jury shall be composed of the greater number not to exceed twelve. In all other civil actions the jury shall be composed of eight members unless the demand specifies a lesser number; and in the event of timely demand by more than one party in such actions the jury shall be composed of the greater number not to exceed eight."

Thus, a valid request for a jury trial is made by a party pursuant to Civ.R. 38(B) upon the basis of the following requirements: (1) the jury demand shall be in writing and may be included in a pleading; (2) the jury demand, to be timely, must be made any time after the commencement of the action but not later than fourteen days after the service of the last pleading; and (3) if the jury demand is included in a pleading, the caption of the pleading shall include the phrase "Jury Demand Endorsed Hereon."

## C. APPELLANT'S REQUEST FOR JURY TRIAL WAS TECHNICALLY DEFICIENT

The record upon review demonstrates that the appellant met the first two requirements of Civ.R. 38: (1) the appellant's answer, as filed on October 31, 1989, contained a written demand for a jury trial; and (2) the jury demand in the answer was timely. The appellant's answer, however, failed to contain a caption which stated "Jury Demand Endorsed Hereon." The failure of the appellant's answer to contain the jury demand in the caption, however, was not prejudicial to the appellee and should not have resulted in the denial of a jury trial.

## D. TECHNICAL DEFICIENCY SHOULD NOT RESULT IN DENIAL OF RIGHT TO JURY TRIAL

The Court of Appeals for Franklin County has addressed the issue of the failure to include in the caption of a pleading the phrase "Jury Demand Endorsed Hereon" and has held that:

"Plaintiff contends that Key Corporation did not properly file its jury trial demand and, thus, waived its right to a jury trial. The claimed defects in the jury trial demand were twofold: (1) that there was a failure to comply with Civ.R. 38(B), which requires that, ' * * * [i]f the demand is endorsed upon a pleading the caption of the pleading shall state "jury demand endorsed hereon" * * * '; and, (2) that the answer and counterclaim, containing the endorsement of the jury demand, were not filed with the court until 14 days after service upon plaintiff, in

violation of Civ.R. 5(D) which requires filing with the court within three days after service.

"Plaintiff's objections to the manner in which the jury trial was demanded are not sufficient to deny Key Corporation its right to a jury. The jury trial demand endorsed upon Key Corporation's answer and counterclaim appears in the place where it is generally contained and is quite clear and readily ascertainable. The requirement that the phrase 'jury demand endorsed hereon' appear in the caption of the pleading in the July 1, 1976 amendment of Civ.R. 38(B) was to help assure that a jury demand endorsement not be overlooked as the rule had not previously specified where the endorsement was to be placed upon the pleading. See Staff Note to Civ.R. 38(B). In this case, there was ample notice before the scheduled trial that a jury had been demanded so that the failure to place the notice of the jury demand in the caption was not prejudicial to the opposing party or to the court in its administrative practice. Hence, that technical deficiency should not be held to deny Key Corporation its substantive and constitutional right to trial by jury." *Carl Sectional Home, Inc. v. Key Corp.* (1981), 1 Ohio App.3d 101, at 103, 1 OBR 403, at 405–406, 439 N.E.2d 915, at 918.

E.  FAILURE OF PETITION TO INCLUDE CAPTION OF "JURY DE-MAND ENDORSED HEREON" SHOULD NOT PREVENT A JURY TRIAL

This court finds the holding of *Carl Sectional Home, Inc. v. Key Corp.* to be most persuasive and thus adopts the reasoning espoused by the Court of Appeals for Franklin County with regard to a request for a jury trial per Civ.R. 38(B). A party to a civil cause of action presents a viable request for a jury trial when (1) the jury demand, which can be contained in a pleading or other communication, is made in writing; and (2) the jury demand is made no later than fourteen days after service of the last pleading. The failure of a pleading to contain the caption "Jury Demand Endorsed Hereon," although technically rendering the demand defective, cannot operate to deprive a party of the substantive and constitutional right to trial by jury where no prejudice befalls the opposing party.

Thus, the trial court in the present appeal erred as a result of failing to grant the appellant a trial by jury. The appellant's request for a jury trial was in writing and was timely. It should also be noted that the denial of the appellant's substantive and constitutional right to trial by jury was not harmless error, regardless of trial before the bench. The appellant's second assignment of error is well taken, and requires reversal of the judgment of the trial court and retrial before a jury.

## IV.  THE THIRD ASSIGNMENT OF ERROR

The appellant's third assignment of error is that:

"The trial court abused its discretion by accepting the unsworn statement of plaintiff's counsel as evidence of the amount of time and effort expended by said counsel in representing plaintiff when considering plaintiff's motion for an award of attorney fees, and committed legal error prejudicial to defendant-appellant, LTV Steel Company, by granting, without a hearing thereon, an attorney fee award of $2,500.00, based upon evidence which failed to meet the standard imposed by DR 2–106(B) of the Code of Professional Responsibility."

### A.  ISSUE RAISED: TRIAL COURT ERRED AS A RESULT OF FAILING TO CONDUCT A HEARING PRIOR TO THE AWARD OF ATTORNEY FEES

The appellant, through its third assignment of error, argues that the trial court erred as a result of awarding the appellee attorney fees in the amount of $2,500. Specifically, the appellant argues that the failure of the trial court to conduct a hearing in order to determine the time and effort expended by appellee's counsel resulted in prejudicial error.

The appellant's third assignment of error is well taken.

### B.  R.C. 4123.519(E) AND THE AWARD OF ATTORNEY FEES

R.C. 4123.519(E), which allows the award of attorney fees to a claimant, provides that:

"(E) The cost of any legal proceedings authorized by this section, including an attorney's fee to the claimant's attorney to be fixed by the trial judge, based upon the effort expended, in the event the claimant's right to participate or to continue to participate in the fund is established upon the final determination of an appeal, shall be taxed against the employer or the commission if the commission or the administrator rather than the employer contested the right of the claimant to participate in the fund.  The attorney's fee shall not exceed twenty-five hundred dollars."

### C.  METHOD BY WHICH ATTORNEY FEES ARE TO BE AWARDED TO CLAIMANT

The award of attorney fees to a claimant by a trial court is specifically authorized by R.C. 4123.519(E).  The mechanism which is to be used to make an award of attorney fees, however, is not provided for in R.C. 4123.519(E).  In fact, the most recent decision rendered by the Supreme Court of Ohio with regard to R.C. 4123.519(E) fails to delineate the mechanism to determine the amount of

attorney fees which can be awarded to a successful workers' compensation claimant. See *Ginnis v. Atlas Painting & Sheeting Co.* (1992), 63 Ohio St.3d 754, 591 N.E.2d 694.

## D. A HEARING SHOULD BE HELD PRIOR TO THE AWARD OF ATTORNEY FEES

This court has tangentially addressed the issue of the need for a trial court to conduct a hearing prior to the award of attorney fees in a workers' compensation case:

"R.C. 4123.519 aptly serves that public policy intended by the legislature in assessing attorney fees as an incident of a successful claimant's recovery. The statute prescribes a maximum ceiling for such an award. Appellant does not contend that the court made an award in excess of the statutory limit.

"However, the employer claims that the award is improper because no evidence was presented on the attorney's charge to his client; nor as to the nature and extent of his services.

"An award of attorneys fees must be supported by evidence in the record. See, *Swanson v. Swanson* (1976), 48 Ohio App.2d 85 [2 O.O.3d 65, 355 N.E.2d 894]. In view of the fact that there is nothing in the record before us which reflects the basis of the court's award, we are unable to conclude whether the amount awarded is reasonable.

"For these reasons, the assignment of error is well taken and the case is remanded for an evidentiary hearing on the nature and extent of legal services provided to appellee. The court, in considering these fees, shall not be bound to the amount originally ordered." *Pahl v. First Union Mgt., Inc.* (Nov. 1, 1984), Cuyahoga App. No. 48026, unreported, at 3, 1984 WL 3543.

This court, in *Pahl,* did not specifically require an evidentiary hearing with regard to every workers' compensation case where an award of attorney fees is contemplated by the trial court. The need for an evidentiary hearing, however, is self-evident in light of the increasing complexity of the majority of workers' compensation cases which are brought at the trial level. R.C. 4123.519(E) provides that an award of attorney fees is to be based upon the "time and effort expended" by a claimant's counsel. The calculation of such an award should not merely involve multiplication of hours expended by counsel times a base rate. To the contrary, the trial court should consider additional factors such as the complexity of the issues involved; the skill required; the attorney's experience, ability and reputation; the amount involved and benefit resulting to the client from services; and the customary fee charged by other members of the bar. Cf. *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 2 O.O.3d 65, 355 N.E.2d 894;

*Merrill, Lynch, Pierce, Fenner & Smith v. Stark* (Aug. 29, 1991), Cuyahoga App. No. 58806, unreported, 1991 WL 185723. Thus, this court holds that an evidentiary hearing is mandated prior to a trial court's award of attorney fees pursuant to R.C. 4123.519(E).

Herein, the trial court did not conduct an evidentiary hearing prior to the award of attorney fees. In addition, the record demonstrates that the trial court's award of attorney fees was based upon an unsworn itemized list of the time expended by appellee's counsel. Such an unsworn itemized list was insufficient to calculate the award of attorney fees.

Therefore, the appellant's third assignment of error is well taken.

## V. THE FOURTH ASSIGNMENT OF ERROR

The appellant's fourth assignment of error is that:

"The trial court committed error prejudicial to defendant-appellant, LTV Steel Company, by granting plaintiff's motion to tax deposition costs and expert witness fees as court costs where the testimony of the expert witness was not required, nor necessary, to the issue in dispute."

## A. ISSUE RAISED: TRIAL COURT IMPROPERLY TAXED AS COSTS DEPOSITION EXPENSES AND EXPERT'S FEE

The appellant, through its fourth assignment of error, argues that the trial court erred by granting the appellee's motion to tax as court costs both deposition expenses and expert witness fees. Specifically, the appellant argues that deposition expenses and the witness fee of Michael J. Joyce, M.D., the appellee's expert, were not necessary to establish the appellee's case-in-chief, thus preventing the taxation of such expenses.

The appellant's fourth assignment of error is not well taken.

## B. ITEMS WHICH ARE TAXABLE AS COSTS

The Supreme Court of Ohio, with regard to R.C. 4123.519 and the taxation of costs, has established that:

"Pursuant to R.C. 4123.519, a common pleas court may tax to the employer the costs of an expert's witness fee preparing and giving his deposition as a 'cost of any legal proceedings authorized by this section.'" *Moore v. Gen. Motors Corp.* (1985), 18 Ohio St.3d 259, 18 OBR 314, 480 N.E.2d 1101, syllabus.

In addition, this court has consistently held that deposition costs and expert witness fees are taxable as court costs pursuant to R.C. 4123.519(C) and (E). *Johnson v. Univ. Hospitals of Cleveland* (June 25, 1992), Cuyahoga App. No.

60777, unreported, 1992 WL 146835; *Trotter v. Euclid Manor Nursing Home* (Apr. 2, 1992), Cuyahoga App. No. 60325, unreported, 1992 WL 67093; *Brooks v. Brost Foundry Co.* (May 2, 1991), Cuyahoga App. No. 58065, unreported, 1991 WL 69341; *Heaton v. Gen. Motors Corp.* (Feb. 27, 1986), Cuyahoga App. No. 50202, unreported, 1986 WL 2668.

## C. TRIAL COURT DID NOT ERR IN TAXING DEPOSITION EXPENSES AND EXPERT'S FEE AND COSTS

A review of the record demonstrates that the deposition testimony of Dr. Joyce was essential to the presentation of the appellee's case and was of great benefit to the trier of fact. Thus, the trial court did not err by taxing as costs the deposition expense and expert witness fee associated with the testimony of Dr. Joyce. The appellant's fourth assignment of error is not well taken.

It should be noted, however, that the reversal of the trial court's judgment, as made through the appellant's second assignment of error, results in the vacation of the trial court's granting of the appellee's motion to tax as costs.

The judgment of the trial court, which allowed the appellee to participate in the Workers' Compensation Fund, is reversed and the matter is remanded for a jury trial. In addition, the trial court's award of attorney fees and costs is vacated.

*Judgment reversed*
*and cause remanded.*

DYKE, J., concurs in judgment only.

KRUPANSKY, J., dissents.

KRUPANSKY, Judge, dissenting.

I respectfully dissent from the majority herein in its disposition of the case *sub judice.*

With respect to the first assignment of error, the majority correctly states the issue, *viz.,* whether the testimony of the appellee, Mr. Perry, was "sufficient to establish a proximate causal relationship between the appellee's initial trip and fall over the Larry-car rail and the appellee's subsequent loss of consciousness and second fall down a flight of steps." The majority opinion, however, fails to distinguish a complex medical problem such as a possible neurological disturbance resulting from an otherwise *noninjurious* trip and fall from what occurs when one suffers a common bruise.

In the case *sub judice,* the majority opinion apparently fails to comprehend what appellee was alleging in his claim: *viz.,* not that his second fall was the cause of contusions to his back, but that the first noninjurious fall *precipitated*

the second fall, *i.e.*, was its proximate cause.  Appellee claimed after the first fall he had pain in his back which progressed to a "dizziness" which then made him "black out."  Certainly a chain of events such as was alleged in the case *sub judice* required more than appellee's testimony to establish the requisite causal connection.  It required expert medical testimony.  *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 52 O.O.2d 76, 261 N.E.2d 114.

"Traditional proximate cause standards require that the trier of the facts, at a minimum, must be provided with evidence that *a result was more likely than not to have been caused by an act, in the absence of any intervening cause.*" (Emphasis added.)  *Cooper v. Sisters of Charity* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97.

The majority boldly asserts that "a person who trips, falls, becomes groggy and suffers immediate pain certainly can experience a sudden loss of consciousness." I disagree.  In the case *sub judice,* appellee testified that he was taking unnecessarily large doses of a prescription drug.  Appellee further testified that when he tripped over the Larry-car rail, the only thing he "fell on" was his hands. On cross-examination, appellee's testimony follows:

"Q.  Incidentally, when you tripped and fell over the Larry car tracks at the tripping point, as I understand the testimony you had given, just to make sure I understand it perfectly, *you didn't strike your back* against anything when you fell, is that correct?

"A.  At this particular time, yes.

"Q.  You did or didn't?

"A.  *I did not.*

"Q.  And *you didn't strike your neck* against anything, did you, at that time?

"A.  *No.*

"Q.  You didn't strike your pelvis against anything at the time you tripped and fell, did you?

"A.  No.

"Q.  So, in terms of getting a bruise on your neck or your back or pelvis, it didn't happen here at the tripping point, did it?

"A.  No.

" * * *

"Q.  I thought you told me that *you walked around* the general area before you proceeded to the platform, did I misunderstand?

"A.  Right, for a minute, just like I said.

"Q. Now, at that point in time, you were fully conscious, is that correct?

"A. *Yes.*

"Q. *Were you feeling dizzy?*

"A. *Lightheaded, a lot of pain.*

"Q. Lightheaded and a lot of pain *where?*

"A. *In my back.*

"Q. What part of your back?

"A. Whole back, up and down. *Felt like something had pulled.*

" * * *

"Q. You thought whatever hurt you might have sustained at that point in time was minor, didn't merit going to see a nurse about it, correct?

"A. At that time, yes.

"Q. You, then, as I understand things, Mr. Perry, you correct me if I'm wrong, you then proceeded to these steps, is that correct?

"A. Yes.

" * * *

"Q. Minute to minute and a half, all right. Your head was clear?

"A. Mostly, somewhat, yes.

" * * *

"Q. It is a dizziness that *hit you all of the sudden* when you were about five or six steps up, is that correct?

"A. I was having a lot of pain, as far as really being dizzy, yes, at that point, *that's when it really hit, yes.*" (Emphasis added.)

Thus, appellee was alleging that a simple fall resulted in back pain severe enough to cause a blackout some three minutes later.

In an opinion cited by appellant but completely ignored by the majority herein, the Ohio Supreme Court recently stated the following:

"The evidence before the trial court at the time appellant moved for a directed verdict showed that appellee fell while descending stairs at his place of employment in an effort to report to a work assignment on a lower floor. *The crucial issue before the court in determining whether appellee's injury was compensable was whether appellee's injury did, in fact, 'arise out of' his employment.*

"An injury sustained by an employee that is compensable under the Workers' Compensation Act 'includes any injury, whether caused by external accidental

means or accidental in character and result, received in the course of, *and arising out of the* injured employee's *employment.*' R.C. 4123.01(C). It is undisputed that appellee sustained his injury while in the course of his employment.

" * * *

"[However,] *there must be some causal connection between the employment and the injury.* * * *

"An injury caused by an unexplained slip or fall presents a unique case under the workers' compensation laws. As Professor Larson notes: 'All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and "neutral" risks—i.e., risks having no particular employment or personal character. Harms from the first are universally compensable. *Those from the second are universally noncompensable.* It is within the third category that most controversy in modern compensation law occurs. * * *' 1 Larson, The Law of Workmen's Compensation (1985) 3–12, Section 7.00. * * *

" * * *

" 'It should be stressed * * * [internal weakness causing a fall], although often discussed in the same breath with unexplained falls, is basically different, since unexplained fall cases begin with a completely neutral origin of the mishap, while *idiopathic fall cases begin with an origin which is admittedly personal and which therefore requires some affirmative employment contribution* to offset the prima facie showing of personal origin.' Larson, *supra,* at 3–314, Section 12.11." (Emphasis added.) *Waller v. Mayfield* (1988), 37 Ohio St.3d 118, 121–123, 524 N.E.2d 458, 461–463.

In the case *sub judice,* appellee alleged that upon tripping over the Larry-car rail and falling, he experienced "pain" and "dizziness," a "pulling sensation." He then asserted these feelings were the origin of the next mishap, *viz.,* the fall down the stairs. This clearly had an *idiopathic* origin.[1] The court in *Waller v. Mayfield* restated the law on falls which are personal in origin: the claimant has the burden to prove his injury "arose out of" his employment. In the case *sub judice,* therefore, *appellee had to prove a proximate causal connection between appellee's first trip and fall and the subjective feelings which resulted and led to the second fall.*

---

1. "Idiopathic" was defined thus in footnote No. 3 in *Waller v. Mayfield, supra* :
   "For workers' compensation purposes, idiopathic refers to an employee's *preexisting physical weakness* or disease *which contributes to the accident.*" (Emphasis added.)

Feelings of pain obviously involve the body's nervous system; however, neurology is not a matter "within common knowledge of the ordinary person," as the majority herein asserts. Rather, the situation is more analogous to that addressed by the court in *Gibbs v. Gen. Motors Corp.* (Mar. 30, 1987), Trumbull Cty. No. 3675, unreported, 1987 WL 8462. Therein, the court noted the following with regard to injuries such as the one alleged in the case *sub judice* :

"While appellant may be correct in advancing that the average layman has experienced some type of strain and/or sprain during his lifetime, *such an experience is not competent for purposes of demonstrating the* nature *or cause of the instant injury.* In this respect, *appellee's reliance on White, supra, is misplaced since the injury in that case involved the existence and cause of a readily observable bruised knee.*

"*Here, the injury sustained by appellee was internal and elusive in nature,* unaccompanied by any observable external evidence.

"It is when the internal complexities of the body are at issue, that we generally initiate the metamorphosis in the evidential progression where medical testimony moves from the pale of common knowledge matters and within layman competency where expert testimony is not required, to those areas where such testimony is more appropriate and indeed most necessary for the trier of fact to understand the nature and *cause* of the injuries alleged. * * *

"The record demonstrates that appellee was the only witness who testified at trial on the subject injury. *Appellee's testimony on this matter was not of sufficient, probative value to support a finding that appellee's injury arose out of* and in the course of *his employment* with appellant and that a direct or proximate causal relationship existed between appellee's employment and his disability." (Emphasis added.)

Similarly, in *Dolly v. Daugherty* (Nov. 15, 1979), Cuyahoga App. No. 40021, unreported, this court came to an identical conclusion. In *Dolly,* appellee filed a claim for an injury suffered when, while performing his employment duties, the car in which he was a passenger was struck. Appellee claimed this caused his injury, a lumbosacral strain. This court, however, decided that such was not an injury as was "within the realm of common or lay knowledge eliminating the requirement of expert testimony." As to appellee's argument regarding causation, this court stated as follows:

"Appellee argues causation was a relatively simple matter in the instant case, capable of determination without expert testimony. We disagree, as heretofore discussed. However, it would have been a relatively easy matter to establish causation by counsel propounding the relevant questions to Dr. Weigel upon

deposing him. In fact, where causation is a basic element of a claimant's rights, it would be wisest as a general rule to establish same by use of expert witnesses." *Id.* at 6.

In the case *sub judice,* appellee's expert medical witness, Dr. Joyce, never testified concerning a proximate causal connection between appellee's first fall and the subsequent feelings of "pain and dizziness" which led to the second fall. In his deposition testimony which was submitted as evidence in the trial court, Dr. Joyce repeatedly stated that appellee was allowed to return to work with no restrictions, that appellee experienced some "dysesthesia"[2] over his "right buttock area," but that his original pelvic injury was "causing no problems" for appellee. Whether appellee's previous medical problems could have predisposed him to "pain and dizziness" after an otherwise noninjurious fall was never addressed.

In the case *sub judice,* therefore, due to the idiopathic nature of the claimed injuries, appellee's testimony was "without probative value to establish a proximate causal relationship between the injury and the result claimed." *Stacey v. Carnegie–Illinois Steel Corp.* (1951), 156 Ohio St. 205, at 213, 46 O.O. 93, at 97, 101 N.E.2d 897, at 901. Since, without expert medical testimony, appellee failed to show by a preponderance of the evidence his injury arose out of his employment, the trial court erred in failing to grant appellant's motion for dismissal.[3] *Id.; Darnell v. Eastman.* Accordingly, I would sustain the first assignment of error and enter judgment for appellant, thereby rendering all of appellant's remaining assignments of error moot. App.R. 12(A)(1)(c).

---

**2.** In his deposition testimony, Dr. Joyce defined "dysesthesia" as "a change in the type of sensation that is interpretted [*sic*] when you touch," implying "an uncomfortable type sensation."

**3.** At trial, appellant erroneously characterized its motion as one for a directed verdict pursuant to Civ.R. 50(A). However, as appellant concedes to this court, its motion at trial is properly deemed a Civ.R. 41(B)(2) motion for dismissal.