[Cite as *Lemus-Sanchez v. Fayette Drywall, Inc.*, 2014-Ohio-2083.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ADRIAN LEMUS-SANCHEZ, | : | APPEAL NO. C-130516 |
| | | TRIAL NO. A-1103793 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| FAYETTE DRYWALL, INC., | : | |
| | | |
| Defendant, | : | |
| | | |
| and | : | |
| | | |
| JENNIE K. VALDEZ, | : | |
| | | |
| and | : | |
| | | |
| ADMINISTRATOR, BUREAU OF | : | |
| WORKERS' COMPENSATION, | : | |
| | | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  May 16, 2014

*E.S. Gallon & Associates* and *Corey L. Kleinhenz*, for Plaintiff-Appellant,

*Michael DeWine*, Ohio Attorney General, and *Stephen D. Plymale*, Assistant Attorney General, for Defendant-Appellee Bureau of Workers' Compensation,

*Michael T. Columbus*, for Defendant-Appellee Jennie K. Valdez.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}   A worker using a jackhammer had a piece of concrete fly into his eye and suffered a cut in the eye.  The issue in this worker's compensation appeal is whether expert medical testimony was required to show that the flying concrete caused the cut.  We think not.  The trial court held otherwise, so we reverse its judgment and remand for further proceedings.

### A Simple Industrial Injury

{¶2}   Adrian Lemus-Sanchez was using a jackhammer to break up concrete for a construction project at Sam's Club when a piece of concrete flew up, broke his safety glasses and hit his left eye.  When his eye continued to hurt after a couple of days, Mr. Lemus-Sanchez went to Miami Valley Hospital.  As a result of the examination performed by the doctors at the hospital, surgery was performed on his left eye.

### The Claim is Denied Administratively Upon a Finding that the Claimant Was not an Employee

{¶3}   Mr. Lemus-Sanchez filed a claim with the Bureau of Workers' Compensation ("BWC"), asserting that he had suffered a corneal laceration with iris prolapse of the left eye while he was working as an employee of Jennie Valdez.  The BWC denied his claim.  Mr. Lemus-Sanchez's appeals of the BWC's denial were later denied by a district hearing officer and a staff hearing officer, who both concluded that Mr. Lemus-Sanchez was not an employee of Ms. Valdez, but rather a subcontractor or independent contractor.  The hearing officers applied the test set forth in R.C. 4123.01, and found that because he did not meet ten of the 20 criteria set forth therein, he was not an employee.  Mr. Lemus-Sanchez then appealed to the common pleas court.

### *The Trial Court Excludes the Hospital Records and Directs a Verdict*

{¶4} The hearing before the court was de novo. *See* R.C. 4123.512. The parties informed the court that the issues were whether Mr. Lemus-Sanchez was an employee of Ms. Valdez, whether he was injured, whether the injury occurred at the workplace, and what the actual cause of the injury was. Mr. Lemus-Sanchez testified about how his injury occurred, and told the court that as a result of his visit to Miami Valley Hospital, his eye was operated on.

{¶5} At the conclusion of Mr. Lemus-Sanchez's testimony, his counsel sought to admit records from Miami Valley Hospital. BWC and Ms. Valdez objected, arguing that the records contained inadmissible hearsay. The trial court excluded the records, but not for the reasons set forth in the objection. Rather, the trial court held the records were not properly authenticated. The court stated,

> You have not laid the foundation. You may have a certified copy. Where
> is your record keeper? They're not stipulating to it. And without that
> record keeper, it's not coming in.

{¶6} Following the court's refusal to admit his hospital records, Mr. Lemus-Sanchez rested. BWC and Ms. Valdez moved for a directed verdict, arguing that, because Mr. Lemus-Sanchez had not presented expert medical testimony, he had not set forth sufficient evidence that his eye had been harmed, and that the harm had been proximately caused by the workplace injury. Without reaching the issue that had been determinative in the BWC's denial of the claim—that is, whether Mr. Lemus-Sanchez was an employee of Ms. Valdez—the court granted the directed verdict based on the lack of expert medical testimony. Mr. Lemus-Sanchez now appeals.

### *The Court Errs, but the Claimant Neglects to Proffer Medical Records*

{¶7} In his first assignment of error, Mr. Lemus-Sanchez asserts that the trial court erred when it refused to admit his medical records into evidence. He is right.

{¶8}    To satisfy Evid.R. 901's authentication requirement, the records only needed to contain the custodian's verified certification pursuant to R.C. 2317.422(A), which provides that

> in lieu of the testimony in open court of their custodian, person who made them, or person under whose supervision they were made, [hospital records] may be qualified as authentic evidence if any such person endorses thereon the person's verified certification identifying such records, giving the mode and time of their preparation, and stating that they were prepared in the usual course of the business of the institution.

*See* Evid.R. 901(B)(10).  Although Mr. Lemus-Sanchez's counsel failed to proffer the records, his counsel's assertion that the records were so certified was not challenged. Accordingly, the records should have been admitted with any impermissible hearsay redacted.

{¶9}    But, the failure of Mr. Lemus-Sanchez's counsel to proffer the records precludes us from reviewing them, and determining whether they contained evidence of causation sufficient to avoid a directed verdict.  As a consequence, although we sustain the first assignment of error, it is not dispositive of Mr. Lemus-Sanchez's appeal.

### *Expert Testimony is Not Required for Matters of Common Knowledge*

{¶10}    Even without the medical records we conclude that there is merit in Mr. Lemus-Sanchez's second assignment of error that the court erred when it granted a directed verdict against him.  To participate in the workers' compensation fund, Mr. Lemus-Sanchez needed to show "not only that his injury arose out of and in the course of his employment but that a direct or proximate causal relationship existed between his injury and his harm or disability."  *Fox v. Indus. Comm. of Ohio*, 162 Ohio St. 569, 576, 125 N.E.2d 1 (1955), paragraph one of the syllabus; R.C. 4123.01(C).  A directed verdict is proper only if "after construing the evidence most strongly in favor

the party against whom the motion is directed, [the trial court] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that evidence is adverse to such party[.]" Civ.R. 50(A)(4).

{¶11} The condition for which Mr. Lemus-Sanchez sought to participate was a corneal laceration with iris prolapse of the left eye. A laceration is, of course, a cut. So a corneal laceration simply describes a cut on the cornea of the eye.[1] And the addition of the term "prolapsed" means only that the cut occurred with displacement of the iris. In lay terms, Mr. Lemus-Sanchez suffered a cut in his left eye.

{¶12} BWC argues that Mr. Lemus-Sanchez needed expert medical testimony to establish the causal connection between the injury (the concrete striking Mr. Lemus-Sanchez in the eye) and the resulting condition (the cut in the eye). But not every workers' compensation claim requires expert testimony to establish causation. Indeed, the Ohio Supreme Court instructs us that while "in certain types of industrial injury cases the testimony of lay witnesses is without probative value to establish the probability of a proximate causal relationship," "in other types of industrial injury cases the testimony of lay witnesses does have probative value in establishing probability of such proximate causal relations, and medical testimony is not absolutely essential." *Bowling v. Indus. Comm. of Ohio*, 145 Ohio St. 23, 26, 60 N.E.2d 479 (1945). In what circumstances, then, is expert testimony necessary to establish the causal relation?

{¶13} The Ohio Supreme Court has held that an issue which "could not possibly be within the knowledge of lay witnesses or [triers-of-fact] required expert medical testimony." *Drakulich v. Indus. Comm. of Ohio*, 137 Ohio St. 82, 88, 27 N.E.2d 932 (1940). Put another way, expert testimony is necessary to establish a causal connection for "injuries that are 'internal and elusive in nature,' and

---

[1] The condition was also referred to below as an "ocular laceration." Ocular means of or connected with the eye, so ocular laceration means a cut related to the eye.

5

'unaccompanied by any observable external evidence.' " *Wright v. Columbus*, 10th Dist. Franklin No. 05-AP-432, 2006-Ohio-759. Thus, in *Wright*, the court decided that a plaintiff's neck and back injuries caused when she was pushed by her supervisor were "internal and elusive, and [were] not sufficiently observable, understandable, and comprehensible by the trier of fact." *Id.* at ¶ 19. Likewise, expert medical testimony was necessary to establish the connection between a particle in the eye and the formation of a cataract. *Stacey v. Carnegie-Illinois Steel Corp.*, 156 Ohio St. 205, 101 N.E.2d 897 (1951). *See Drakulich, supra* (expert medical testimony was necessary to establish the alleged connection between an injury to a person's back and his subsequent death from liver cancer).

{¶14} In contrast, "[w]here the issue of causal connection between an injury and the specific subsequent physical disability involves questions which are matters of common knowledge, medical testimony is not necessary in order to submit the case to the [trier-of-fact]." *White Motor Corp. v. Moore*, 48 Ohio St.2d 156, 357 N.E.2d 1069 (1976), paragraph two of the syllabus. Thus, in *White Motor Corp.*, the Ohio Supreme Court concluded that expert medical testimony was not necessary to establish the causal connection between a truck frame that had fallen on the claimant's leg and the resultant "bruise above the left patella." *Id.* at 159. That a bruise could result from a large metal frame falling on a person is within common knowledge. Similarly, the Ohio Supreme Court decided that a plaintiff who had had hot liquid splashed in his eye did not need expert medical testimony to establish the causal relationship between the splashed liquid and the ensuing damage to his eye, because such a result was "a matter of common knowledge." *Bowling*, 145 Ohio St. at 29, 60 N.E.2d 479. *See Perry v. LTV Steel Co.*, 84 Ohio App.3d 670, 618 N.E.2d 179 (8th Dist.1992) (expert medical testimony was not necessary because it was common knowledge that loss of consciousness and immediate pain could result after a fall).

6

### *It's Common Knowledge that Flying Concrete Can Cut One's Eye*

{¶15}    Here, we conclude that it is common knowledge that corneal laceration could result from the accident that occurred here.  You don't need a doctor to tell you that a cut is likely to result if a piece of concrete, displaced by jackhammer, flies up, breaks one's glasses and hits the eye.  Expert testimony was not necessary.

{¶16}    The trial court erred when it granted a directed verdict. Mr. Lemus-Sanchez's second assignment of error is sustained, and we reverse the judgment of the trial court and remand the case for further proceedings.

Judgment reversed and cause remanded.

**HENDON, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.