REED, Appellee,

v.

MTD PRODUCTS, INC., MIDWEST INDUSTRIES, Appellant, et al.*

[Cite as *Reed v. MTD Products, Inc., Midwest Industries* (1996), 111 Ohio App.3d 451.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–95–023.

Decided May 31, 1996.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 77 Ohio St.3d 1472, 673 N.E.2d 137.

452

*Zelvy & Associates, Robert Zelvy* and *Melissa L. Eaton*; *Kenneth A. Stump,* for appellee Maxine Reed.

*David R. Cook,* for appellant.

*Per Curiam.*

This case is before the court on appeal from the judgment and rulings of the Huron County Court of Common Pleas which, following a jury trial, (1) determined that plaintiff-appellee, Maxine Reed, was entitled to participate in the Workers' Compensation Fund for injuries she sustained during the course of her employment with defendant-appellant, MTD Products, Inc., Midwest Industries ("MTD"), on February 28, 1992, (2) denied MTD's motions for a new trial and for judgment notwithstanding the verdict, and (3) ordered MTD to pay Reed for certain expenses of the litigation. In particular, the jury concluded that as a result of an accident at work, Reed sustained contusions of the right leg and right arm, strains to the low back and right hip, and an exacerbation of a preexisting arthritic condition of the right hip. MTD now raises the following assignments of error from that judgment:

"FIRST ASSIGNMENT OF ERROR

"The trial court erred to the prejudice of Midwest in permitting Reed to present evidence of an injury/medical impairment which had not been considered by or the subject of a final order of the Industrial Commission.

"SECOND ASSIGNMENT OF ERROR

"The trial court erred to the prejudice of Midwest in overruling its timely motion for a new trial.

"THIRD ASSIGNMENT OF ERROR

"The trial court erred in overruling the timely made motions both for a directed verdict and for judgment notwithstanding the verdict to the prejudice of Midwest.

"FOURTH ASSIGNMENT OF ERROR

"The trial court erred to the prejudice of Midwest in giving a jury instruction directing the jury not to consider what it learned from the trial court and the

claimant's attorney as to the final administrative determination regarding a workers' compensation claim.

"FIFTH ASSIGNMENT OF ERROR

"The trial court erred to the prejudice of Midwest in approving a Referee's recommendation that it reimburse Reed for certain litigation expenses."

The relevant facts of this case are as follows. On the morning of February 28, 1992, Maxine Reed was working in her regular job as an assembler for MTD. Reed was standing in front of her machine when she heard Anthony Tackett, a forklift operator, yell, "Maxine, watch out." Reed then turned and saw three pallets which were stacked on a forklift falling toward her. Reed quickly turned into her machine as closely as she could and covered her head with her hands. She then felt an undetermined number of lawnmower height adjuster parts, which had been on the pallets, hit her on the right side of her body. The parts weigh two to three pounds each. After the accident, Deanna Ridgeway, a medical assistant in MTD's dispensary, was called to assist Reed. Reed was shaken and complained of pain on the lower right side of her body. Ridgeway helped Reed to the dispensary, where Reed was given ice for her leg and foot. Subsequently, Reed went home.

The next day, a Saturday, Reed saw Dr. John Rosso, a family doctor who frequently treats MTD employees. Reed told Rosso that three pallets had fallen on her. Rosso's notes from that appointment, however, indicate that Reed complained of soreness in her left hip, left forearm and upper left leg. Upon examining Reed, Rosso concluded that she had superficial contusions as a result of the accident. At that time, Reed was already taking medication for arthritis. Rosso therefore told her to continue taking that medication. On the following Monday, March 2, 1992, Reed saw her personal doctor, Dr. Richard Davies. Although Davies's notes do not reflect that Reed told him about the accident at that time, Reed and her daughter, Julie Ann Perry, who accompanied Reed to Davies's office, testified at the trial below that Davies was told of the accident. Reed further testified that Davies told her to take the week off from work and to continue to take her arthritis medication.

On March 9, 1992, Reed returned to work but was still experiencing pain in her right pelvis and down into her right foot. Although Reed had been taking medication for her arthritis prior to the accident, she testified below that prior to the accident she had not had any pain in her right hip area. Reed continued to work but over the next two months she missed several days of work because of the pain in her right hip area. On May 22, 1992 she returned to Davies because of the pain in her right hip. That was also the last day that she worked for MTD. During the summer of 1992, Reed saw several doctors because of the pain in her right hip, including a neurologist. Thereafter, in September 1992, she applied for

workers' compensation benefits. Then, on September 25, 1992, she saw Dr. Michael Kolczun, an orthopedic surgeon. After obtaining a medical history from Reed and reviewing x-rays taken of Reed's right hip seven months after the accident, Kolczun concluded that Reed had severe arthritis in her right hip, that she had the arthritis prior to the accident and that the accident caused a further degeneration of the hip. He recommended a conservative course of treatment, which included medication and the use of a cane. However, by April 1994, Reed's hip had severely degenerated and on April 7, 1994 she had surgery for a total replacement of her right hip joint.

On August 17, 1993, the Industrial Commission of Ohio affirmed the decision of the Toledo Regional Board of Review to grant Reed the right to participate in the Workers' Compensation Fund for the claims of strain of the right hip and low back, and contusions of the right hip, right pelvis and right arm. On October 19, 1993, MTD filed a notice of appeal with the Huron County Court of Common Pleas to challenge the decision of the Industrial Commission. In response, Reed filed a complaint and petition on appeal pursuant to R.C. 4123.519(C),[1] setting forth a statement of facts which she alleged showed a cause of action to participate in the Workers' Compensation Fund. Subsequently, on March 21, 1994, Reed filed a motion for leave to amend her pleadings based on Civ.R. 15(A). In her supporting memorandum, Reed asserted that as a direct and proximate result of the work-related accident on February 28, 1992, she suffered a severe exacerbation of a preexisting arthritic condition of her right hip, that the exacerbation has become so severe that her right hip has completely collapsed, and that as a result she is in need of a total hip replacement. MTD opposed the motion and argued that because there had never been an administrative determination which either granted or denied Reed the right to participate in the Workers' Compensation Fund for the condition of a severe exacerbation of a preexisting arthritic condition of the right hip, Reed could not raise the issue for the first time in the common pleas court. Upon review, the court granted Reed's motion for leave, allowing her to file an amended complaint to include the claim of severe exacerbation of a preexisting arthritic condition of the right hip.

On July 28, 1994, MTD filed a motion *in limine* asking the court to exclude any evidence that Reed may have sustained an exacerbation or aggravation of a preexisting arthritic condition of the right hip. MTD again asserted that no final administrative order had been entered as to whether this condition was or was not directly or proximately caused by an injury in the course of and arising out of Reed's employment with MTD or whether Reed had a right to participate in the

---

1. Effective October 20, 1993, R.C. 4123.519 was amended and renumbered as R.C. 4123.512. Substantively, however, the statute remained the same, and the cases cited in this decision which refer to R.C. 4123.519 are equally applicable to R.C. 4123.512.

Workers' Compensation Fund for this condition. Subsequently, the lower court denied the motion, and on January 12, 1995, a jury trial commenced. At the conclusion of the trial, the jury found that Reed was entitled to participate in the fund for injuries she sustained as a result of a work-related accident at MTD on February 28, 1992. Answering interrogatories, the jury allowed Reed's claims for an exacerbation of a preexisting arthritic condition of the right hip, a strain to the right hip and low back, and contusions to the right arm and right leg. The jury disallowed Reed's claims for contusions of the right hip and right pelvis. Thereafter, Reed filed a motion for the payment of attorney fees and certain litigation expenses pursuant to R.C. 4123.512(F). A hearing was held before a court-appointed referee, who recommended that Reed was entitled to the payment of attorney fees and certain litigation expenses totaling $5,955.43. Despite MTD's objections, the trial court adopted the referee's report and recommendation without modification. Additionally, MTD filed posttrial motions for a new trial and for judgment notwithstanding the verdict, which motions were denied. MTD thereafter filed a timely notice of appeal challenging the trial court's judgment in favor of Reed as well as the court's rulings on the motions for a new trial and for judgment notwithstanding the verdict.

In its first assignment of error, MTD contends that the trial court erred in granting Reed's motion to amend her pleadings and in overruling MTD's motion *in limine.* MTD argued in opposition to both motions, and argues here, that the common pleas court did not have jurisdiction to consider Reed's claim of an exacerbation of a preexisting arthritic condition of her right hip because the Industrial Commission did not determine Reed's right to participate in the Workers' Compensation Fund for that injury. MTD supports its position with our decision in *Grant v. Glidden Coatings & Resins, Div. of SCM Corp.* (Aug. 23, 1985), Erie App. No. E–84–53, unreported, 1985 WL 9355, in which we held that a workers' compensation claimant could not raise a claim for a new injury for the first time in the common pleas court. Specifically, we concluded that "[i]f the claimant could effectively amend a complaint at the court of common pleas to include a claim not previously litigated, the claimant could circumvent the entire administrative process. No longer would a claimant be required to pursue his claim through the various administrative stages upon the workers' compensation cases; instead, the claimant would merely amend his complaint at the common pleas court. Such a result is untenable for it destroys the entire workers' compensation administrative process, developed by the legislature as set forth in R.C. 4123.01, et seq."

In contrast, Reed cites the decision of the Court of Appeals for Hamilton County, in *Grant v. Ohio Dept. of Liquor Control* (1993), 86 Ohio App.3d 76, 619 N.E.2d 1165, in support of her position that she could raise the exacerbation

claim for the first time before the common pleas court. *Grant* addressed the same issue now before us and, in a detailed analysis, concluded that a workers' compensation claimant can file for an entirely new and independent condition, which was not raised before the Industrial Commission, for the first time in the common pleas court. The court reasoned:

"An appeal from the Industrial Commission pursuant to R.C. 4123.519 is a *de novo* determination of both the facts and law. See *Afrates v. Lorain* [ (1992), 63 Ohio St.3d 22, 584 N.E.2d 1175]. The claimant is not limited to the record of the evidence presented at the Industrial Commission but may offer evidence in the common pleas court as in any civil action. As the trier of fact, the judge or the jury upon the evidence adduced at the hearing decides *de novo* a single issue of the claimant's right to participate in the fund without deference to the decision of the Industrial Commission. *Maitland v. St. Anthony Hosp.* (Oct. 3, 1985), Franklin App. No. 85AP–301, unreported, 1985 WL 10455; see *Marcum v. Barry* (1991), 76 Ohio App.3d 536, 538–539, 602 N.E.2d 419, 420–422. In a *de novo* appeal to the common pleas court the findings of the Industrial Commission become 'irrelevant,' *Skerya v. Indus. Comm.* (1986), 30 Ohio App.3d 154, 155, 30 OBR 273, 274, 506 N.E.2d 1228, 1230, and unless the parties stipulate the evidence, it is error for the common pleas court to rely upon the evidence presented before the commission. See *Kiefer v. Daugherty* (Sept. 12, 1979), Crawford App. No. 3–78–15, unreported.

"The several appellate districts that have concluded that a claimant's condition is precluded unless raised before the Industrial Commission do not focus on the nature of the *de novo* appeal provided by the legislature in R.C. 4123.519. *Dunn v. Mayfield* (1990), 66 Ohio App.3d 336, 584 N.E.2d 37; *Kaltenbach v. Mayfield* (Apr. 27, 1990), Pickaway App. No. 89–CA–10, unreported, 1990 WL 54857; *Mull v. Jeep Corp.* (1983), 13 Ohio App.3d 426, 13 OBR 514, 469 N.E.2d 923 (Douglas, J., dissenting). Instead, these courts rely generally upon the judicially created rule that to permit a party to raise an issue for the first time in the common pleas court 'would frustrate the statutory system for having issues raised and decided through the administrative process.' *Mull v. Jeep Corp., supra*, at 428, 13 OBR at 515–517, 469 N.E.2d at 925–926. However, in *Mull*, the court also specifically noted that it was not extending this rule of preclusion to all evidentiary issues, but only to cases where the claimant attempts to convert a claim for injury under R.C. 4123.01(C) to a claim for an occupational disease under R.C. 4123.68(BB). Courts have also resorted to the judicially created doctrine of exhaustion of remedies.

"Rights under the Ohio workers' compensation system are conferred by Section 35, Article II of the Ohio Constitution, which delegates the exclusive power to the legislature to pass laws providing for injuries and occupational

diseases occasioned in a worker's course of employment. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489. Under the right of appeal, created by the legislature in R.C. 4123.519, the only issue is 'the right of the claimant to participate in the fund,' see *Felty v. AT & T Technologies, Inc.* (1992), 65 Ohio St.3d 234, 237–240, 602 N.E.2d 1141, 1144–1146. Accordingly, the commission's challenge to the common pleas court's jurisdiction relates to substantive rights created by the legislature, which a court cannot abridge, enlarge, or modify by fiat or by a judicially created rule. *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1989), 44 Ohio St.3d 17, 540 N.E.2d 266; *Alexander v. Buckeye Pipe Line Co.* (1977), 49 Ohio St.2d 158, 3 O.O.3d 174, 359 N.E.2d 702.

"In a trial *de novo* the issues 'arise on the pleadings.' R.C. 2311.01. The claimant's right to participate in the fund has no limitation under R.C. 4123.519, as Justice Douglas succinctly observed in his dissent in *Mull v. Jeep Corp., supra.* In determining the claimant's right to participate, any issues can be raised in the trial court except issues of extent of disability. *Alcorn v. Spalding & Evenflo Corp.* (1992), 79 Ohio App.3d 561, 607 N.E.2d 904 (involving the failure to seek commission review under R.C. 4123.516). No provision now expressly prohibits claims or issues raised for the first time by an amended complaint in the common pleas court. See *Smith v. Young* (1963), 119 Ohio App. 176, 26 O.O.2d 405, 197 N.E.2d 835 (finding that R.C. 4123.519 gave the common pleas court jurisdiction to hear evidence of an accidental occurrence that was not asserted before the commission). The authority under R.C. 4123.519 for the parties to take depositions and to file them subsequently in the common pleas court suggests that the legislature contemplated that new issues might well surface during the discovery process and, as a matter of judicial economy, intended to allow their adjudication during the trial *de novo.* * * *

" * * * As provided in R.C. 4123.519, the pleadings are governed by the Ohio Rules of Civil Procedure. Under Civ.R. 15(A) a court should 'freely' allow leave to amend. The purpose of this provision is that cases will be decided on their merits rather than on procedural technicalities. *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 12 OBR 1, 465 N.E.2d 377; *Dietrick v. Ohio Bur. of Workers' Comp.* (1991), 72 Ohio App.3d 567, 595 N.E.2d 513. Correspondingly, the policy of liberal amendment under Civ.R. 15(A) must be viewed by the court in light of the legislature's policy of liberal construction of the Workers' Compensation Act in favor of the employee claimant in R.C. 4123.95. Although denial of leave is within the sound discretion of the trial judge, absent evidence of bad faith, undue delay or undue prejudice, a party's motion for leave to amend is to be granted under the liberal amendment policy of Civ.R. 15(A). *Hoover v. Sumlin, supra,* 12 Ohio St.3d at 5–6, 12 OBR at 4–6, 465 N.E.2d at 381." (Footnotes omitted.) *Id.,* 86 Ohio App.3d at 81–83, 619 N.E.2d at 1169–1170.

We find the decision in *Grant v. Ohio Dept. of Liquor Control* to be better reasoned. *Grant* more thoroughly addresses the varying concerns of this issue than does our previous decision in *Grant v. Glidden Coatings & Resins, Div. of SCM Corp.* and, therefore, we hereby overrule *Grant v. Glidden Coatings & Resins, Div. of SCM Corp.* We therefore conclude that the trial court did not err in allowing Reed to amend her complaint before the common pleas court and the first assignment of error is not well taken.

In its second assignment of error, MTD asserts that the trial court erred in denying its motion for a new trial. Specifically, MTD contends that the court committed prejudicial error in failing to rule on MTD's objections to testimony from medical experts.

In the proceedings below, MTD asserted several grounds in support of its motion for a new trial. In particular, MTD argued that the testimony of Davies and Kolczun was improperly considered by the jury because the court failed to rule on objections to that testimony, that the jury's verdict allowing Reed's claims for a contusion of the right arm and for a strain of the right hip and low back were not supported by the evidence, and that Kolczun's testimony that Reed suffered an exacerbation of a preexisting arthritic condition of the right hip should not have been considered by the jury. Civ.R. 59 governs the filling of motions for a new trial and provides:

"(A) A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

"(1) Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

"* * *

"(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

"(7) The judgment is contrary to law;

"* * *

"(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.    ·

"In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown."

It is well settled that "the granting of a motion for a new trial rests in the sound discretion of the trial court and will not be disturbed upon review absent

an abuse of discretion." *Bible v. Kerr* (1992), 81 Ohio App.3d 225, 226, 610 N.E.2d 1037, 1038.

The testimony of Davies and Kolczun at the trial below was presented to the jury by way of videotaped depositions. Throughout the depositions, MTD's counsel objected to a variety of matters testified to by the doctors. Those videotapes were then played for the jury without the trial judge ruling on the objections. Where a trial court fails to expressly rule on an objection, it will be presumed to have overruled the objection. *Solon v. Solon Baptist Temple, Inc.* (1982), 8 Ohio App.3d 347, 351–352, 8 OBR 458, 462–463, 457 N.E.2d 858, 863–864. Civ.R. 40 enables the recording of trial testimony on videotape for later presentation to the jury. C.P.Sup.R. 12 then sets forth the procedures to be followed in presenting videotaped testimony to a jury. That rule provides:

"(A) Videotape Depositions:

" * * *

"(11) *Filing where objections made.* When a deposition containing objections is filed with the court pursuant to Civ.R. 30(F)(1), it shall be accompanied by the officer's log of objections. A party may request that the court rule upon the objections within 14 days of the filing of the deposition or within such other reasonable time as stipulated by the parties. In ruling upon objections, the court may view the videotape recording in its entirety, or view only those parts of the videotape recording pertinent to the objections made.

" * * *

"(15) *Objections at trial.* Objections should be made prior to trial and all objections must be made before actual presentation of the videotape at trial. *If an objection is made at trial which has not been waived pursuant to Civil Rule 32(D)(3) or previously raised and ruled upon, such objection shall be made before the videotape deposition is presented. The trial judge shall rule on such objections prior to the presentation of the videotape.* If an objection is sustained, that portion of the videotape containing the objectionable testimony shall not be presented." (Emphasis added.)

Finally, Civ.R. 32(B) reads:

"Subject to the provisions of subdivision (D)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying. Upon the motion of a party, or upon its own initiative, the court shall decide such objections before the deposition is read in evidence."

The record of the trial below reveals that prior to the playing of the videotapes, MTD did not object to the admission in evidence of the depositions of Davies and Kolczun. Accordingly, we find that MTD waived its objections to this testimony.

■■ Next, MTD asserts that the jury's verdict allowing Reed's claims for a contusion of the right arm and for a strain of the right hip and low back were not supported by the evidence. At the trial below, Reed testified that as she saw the pallets falling toward her, she turned into her work station, pressing the left side of her body as close to the station as she could get. There was no medical testimony regarding contusions of Reed's right arm. Rather, the following occurred during the direct examination of Reed by her attorney:

"Q. Okay. Can you show me by pointing out, and I'm going to stand right here, where those parts hit you on your body.

"A. Yes, I can do that.

"Q. Okay. Go ahead.

"A. Turn to the right. Turn this way, Mr. Zelvy. When they come [sic] flying out and turned, I turned like that and I felt one stinging me here, (indicating). I felt them stinging me all up down here, all up in here (indicating)."

From this testimony, it is impossible for this court to determine whether Reed indicated that she was hit in the right arm by the lawnmower parts. However, because the jury did find that Reed sustained a contusion to the right arm, we must assume that Reed indicated she was hit in the right arm. In addition, Reed's daughter, Julie Ann Perry, who accompanied Reed to Rosso's and Davies's offices, testified that when Reed removed her pants, her legs and back were covered with bruises. Davies testified that while he did not examine Reed's arm, a contusion is simply a bruise. Whether Reed suffered a bruise to her right arm as a result of the accident is not a matter necessitating expert testimony. *White Motor Corp. v. Moore* (1976), 48 Ohio St.2d 156, 159–160, 2 O.O.3d 338, 340–341, 357 N.E.2d 1069, 1071–1072; Evid.R. 702. From the evidence below, a jury could reasonably conclude that Reed suffered a contusion to the right arm. Finally, although Rosso's notes indicate that Reed suffered a contusion to the left arm, given the testimony of Reed, Ridgeway and Perry that Reed sustained injuries to the right side of her body, the jury could have determined that Rosso was mistaken as to which side of Reed's body was injured.

■ MTD's challenge to the jury's finding that Reed suffered a strain of the right hip and low back is also without merit. MTD contends that because Davies and Kolczun had different understandings of how the accident occurred, their opinions as to Reed's injuries were flawed. Reed testified that in attempting to

avoid the accident, she turned the left side of her body into her work station, but she did not twist or fall. Davies testified that he understood Reed's right side was jammed into the work station. Upon examining Reed in May 1992, Davies diagnosed Reed as having a strain of the right hip joint and the right side of the low back. Kolczun's testimony related mostly to Reed's claim for an exacerbation of arthritic condition in her right hip, which testimony is irrelevant to the issues of a strain to the right hip and low back. Kolczun did state, however, that based on the history provided to him by Reed, he believed Reed had fallen into her work station. Based on Reed's statements as well as a physical exam and a review of x-rays, Kolczun diagnosed Reed with severe arthritis and a possible fracture of the right hip. The results of a bone scan and an MRI, however, were inconclusive as to whether Reed suffered a fractured hip. He further stated that if Reed did not fall or twist, she would have to have been hit directly on the hip by many parts to sustain the subsequent damage she sustained. We do not find that the inconsistencies in the testimony are fatal to Reed's claims. Rather, it is clear from the testimony that whether Reed turned into, was jammed into, or twisted into her work station, she sustained injuries as a result of the accident. Davies testified that those injuries included a strain of the right hip and low back. Accordingly, we do not find that the trial court abused its discretion in denying MTD's motion for a new trial on this ground.

Finally, MTD contends that the lower court should have granted its motion for a new trial because of the erroneous inclusion in the trial below of Reed's claim for an exacerbation of a preexisting condition to her right hip. As stated above, the inclusion of the exacerbation claim was not erroneous. Accordingly, we do not find the trial court's denial of MTD's motion for a new trial on this basis to be in error.

The second assignment of error is therefore not well taken.

In its third assignment of error, MTD asserts that the trial court erred in denying its timely filed motions for a directed verdict and for judgment notwithstanding the verdict. As explained above, the jury's findings as to all of the claims were supported by the record. The third assignment of error is therefore not well taken.

In its fourth assignment of error, MTD contends that the trial court erred in instructing the jury not to consider what it learned from the trial court and the claimant's attorney as to the final administrative determination regarding Reed's workers' compensation claim. At the beginning of the trial below, the trial judge, in opening remarks to the jury stated:

"You've been summoned here as prospective jurors in a civil case that involves a worker [*sic*] compensation claim, and this is an appeal by the employer, MTD

Products, Incorporated [from] a finding by the Worker [*sic*] Compensation Bureau allowing a claim by its employee Maxine Reed for certain work related injuries."

Subsequently, during the voir dire, Reed's counsel stated:

"Do you understand that when you have a claim for an injury that you claim happened while you were working, that there is procedure that has to be filed, you understand that? That you file a claim, and that you go through this procedure with hearings, and in this area most of them are held in Mansfield, some are held in Toledo, Columbus, whatever, that either side at any level may file an appeal. You understand that? Okay.

"So that if either side is unhappy, there is a right of an appeal, and that's how we're here today. This case is on an appeal. Okay? And the fact that my client is in the caption of the case, titled as the claimant, okay, and/or the plaintiff in this action, I would not want you to infer that it's her appeal. Okay?"

MTD's counsel then objected to this statement, which objection the trial court sustained. Subsequently, in reviewing the applicable jury instructions, the trial court and counsel had the following discussion outside the hearing of the jury:

"THE COURT: I'm going to give it. What we're talking about is the instruction, as follows: I'll read it there was reference regarding the decisions rendered by the Industrial Commission of Ohio in plaintiff's worker [*sic*] compensation claim. You are to disregard all evidence concerning any administrative decisions or references to those decisions and decide this case solely upon the testimony presented to you in this court."

MTD's counsel objected to the proposed instruction. The court overruled the objection and read the instruction as indicated. MTD contends that the giving of this instruction was prejudicial error.

When specific portions of a trial court's instructions are at issue, an appellate court reviews the instructions as a whole. *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 16, 19 OBR 71, 81, 482 N.E.2d 955, 966. "So long as the law is clearly and fairly expressed to the jury so that they are able to understand it as it applies to the facts in the case at hand then no reversible error has been committed." *Id.* It is well established that "[b]ecause of the *de novo* status afforded the review of the common pleas court [in workers' compensation cases], the findings made by the Industrial Commission become irrelevant." *Skerya v. Indus. Comm.* (1986), 30 Ohio App.3d 154, 155, 30 OBR 273, 274, 506 N.E.2d 1228, 1230. By instructing the jury as it did, the trial court below informed the jury of the proper applicable law and cured any error which occurred earlier in the proceedings with regard to this issue. MTD contends that the instruction improperly drew attention to the prior decision of the Industrial

Commission. However, no *evidence* of that decision was ever presented at the trial below or referred to by any witness. Accordingly, we do not find that MTD was prejudiced by this instruction, and the fourth assignment of error is not well taken.

Finally, in its fifth assignment of error, MTD asserts that the trial court erred in approving a referee's recommendation that MTD reimburse Reed for certain litigation expenses. After the trial below, Reed filed a motion for the payment of certain litigation expenses. Neither the motion nor a transcript from the subsequent hearing on the matter is in the record before this court. The parties, however, have filed a statement of evidence of proceedings pursuant to App.R. 9(C). That statement reveals the following. Reed filed a motion requesting that MTD pay Reed's attorney fees in the amount of $2,500 pursuant to R.C. 4123.512(F). Evidence was introduced that the parties spent four days in trial and Reed's counsel represented that he spent an additional one hundred fifty hours in preparation for the trial. Reed also requested that MTD be ordered to reimburse her for certain litigation expenses and costs incurred in the prosecution of the case. Reed asserted that all costs submitted were reasonable and directly related to the preparation and presentation of her case. MTD, however, argued that evidence must be submitted by Reed that the deposition fees charged by Davies and Kolczun were reasonable and customary. No factual evidence was presented on this issue. MTD further argued that the cost of the subpoena of Rosso issued by Reed was inappropriate for reimbursement. Based on the arguments of counsel, the referee determined that $4,610.93 of the claimed expenses were not in dispute and recommended that that amount be awarded to Reed. The referee further concluded that Reed should be awarded the following disputed expenses:

| | |
|---|---|
| "Dr. Michael Kolczun fees for video depo | $962.50 |
| "Dr. Davis [*sic*] fees for video depo | 200.00 |
| "Huntley Reporting for subpoena Dr. Russo [*sic*] | 30.00" |

Thereafter, MTD filed objections to the referee's report and recommendation, specifically objecting to the award of disputed expenses to Reed. In a judgment entry of April 3, 1995, the trial court approved the report and recommendation of the referee over the objections of MTD.

R.C. 4123.512, the statute governing workers' compensation appeals to the common pleas court, provides:

"(D) * * * Any party may file with the clerk prior to the trial of the action a deposition of any physician taken in accordance with the provisions of the Revised Code, which deposition may be read in the trial of the action even though the physician is a resident of or subject to service in the county in which the trial is had. The bureau of workers' compensation shall pay the cost of the deposition

filed in court and of copies of the deposition for each party from the surplus fund and charge the costs thereof against the unsuccessful party if the claimant's right to participate or continue to participate is finally sustained or established in the appeal. In the event the deposition is taken and filed, the physician whose deposition is taken is not required to respond to any subpoena issued in the trial of the action. * * *

" * * *

"(F) The cost of any legal proceedings authorized by this section, including an attorney's fee to the claimant's attorney to be fixed by the trial judge, based upon the effort expended, in the event the claimant's right to participate or to continue to participate in the fund is established upon the final determination of an appeal, shall be taxed against the employer or the commission if the commission or the administrator rather than the employer contested the right of the claimant to participate in the fund. The attorney's fee shall not exceed twenty-five hundred dollars."

The Supreme Court of Ohio has determined that pursuant to R.C. 4123.512(F), "a common pleas court may tax to the employer the costs of an expert's witness fee preparing and giving his deposition as a 'cost of any legal proceedings authorized by this section.'" *Moore v. Gen. Motors Corp.* (1985), 18 Ohio St.3d 259, 18 OBR 314, 480 N.E.2d 1101, syllabus. Recovery of costs under R.C. 4123.512(F), however, "hinges on a claimant's successful establishment of a right to participate for the condition at issue." *State ex rel. Williams v. Colasurd* (1995), 71 Ohio St.3d 642, 645, 646 N.E.2d 830, 833. Moreover, "a trial judge has discretion to limit the award of costs for expert witnesses to those experts who are reasonably necessary to the presentation of the claimant's R.C. [4123.512] appeal." *Moore, supra,* at 262, 18 OBR at 317, 480 N.E.2d at 1104. Expert witness fees, however, are not reimbursable under R.C. 4123.512(D) as "costs of the deposition." *State ex rel. Williams v. Colasurd, supra,* at 644–645, 646 N.E.2d at 832–833. Under R.C. 4123.512(D), a claimant need not be successful to recover the costs of a deposition.

Kolczun's testimony related to Reed's claim for an exacerbation of a preexisting arthritic condition of her right hip. Kolczun is an orthopedic surgeon. His deposition took approximately one and one-half hours, during which time he testified as to his treatment of Reed and his review of x-rays and a radiologist's report. Kolczun's charge for this testimony was $962.50.

Davies is a doctor of osteopathic medicine who specializes in family practice. His testimony related to Reed's other claims and to her medical history in general. The deposition transcript reveals that Davies's deposition took approximately two hours and his charge for this time was $200. MTD cites *Perry v.*

*LTV Steel Co.* (1992), 84 Ohio App.3d 670, 618 N.E.2d 179, in support of its proposition that the lower court was required to hold a hearing to determine if the expert witness fees were reasonable. *Perry*, however, held that because R.C. 4123.512(F) authorizes an award of attorney fees based upon the time and effort expended by the claimant's attorney, a hearing is required to evaluate those factors. No such requirement is set forth in the statute with regard to expert witness fees. Upon review, we find that the trial court did not abuse its discretion in implicitly concluding that the expert witness fees charged by the doctors were reasonable.

██ Last, MTD challenges the trial court's award to Reed of the cost of a subpoena issued to Rosso. MTD argues that there was no evidence of the reasonableness of or need for this expense. R.C. 4123.512(D) provides that "[i]n the event the deposition is taken and filed, the physician whose deposition is taken is not required to respond to any subpoena issued in the trial of the action." In the proceedings below, MTD filed a statement of prospective witnesses on July 28, 1994, which listed Rosso as an expert witness. Rosso's deposition was taken in this matter on August 5, 1994. At that deposition, the parties stipulated that they would take the deposition in lieu of Rosso's appearance at trial. That deposition was subsequently filed with the court on August 31, 1994. Reed asserts that MTD listed Rosso as an expert witness, that she subpoenaed him in order to ensure his appearance in this matter, and that because Rosso's deposition had not been taken or filed when the subpoena was issued she is entitled to recover the $30 expended in issuing the subpoena. The record, however, does not contain any evidence of the subpoena or indicate when the subpoena was issued. Because there was nothing in the record upon which to base an award of $30 for issuance of the subpoena, we conclude that the trial court abused its discretion in making this award.

The fifth assignment of error is therefore well taken in part.

On consideration whereof, the court finds that substantial justice has not been done the party complaining and the judgment of the Huron County Court of Common Pleas is reversed in part and affirmed in part. The portion of the judgment awarding Reed the subpoena fee for Rosso is reversed. The trial court's judgment is affirmed in all other respects. Appellant is ordered to pay the court costs of this appeal.

*Judgment affirmed in part*
*and reversed in part.*

MELVIN L. RESNICK, P.J., GLASSER and SHERCK, JJ., concur.