OPINION
Pamela and Michael Richard appeal from a judgment of the Miami County Court of Common Pleas which awarded Mrs. Richard $2,130.00 for past medical expenses, past pain and suffering, and past loss of enjoyment of life.
On March 21, 1997, Michael and Pamela Richard filed a complaint against Wal-Mart Discount Stores ("Wal-Mart") for negligence and loss of consortium. On April 22, 1997, Wal-Mart filed an answer denying the allegations and setting forth defenses. The evidence presented at the jury trial established the following.
On Friday, March 23, 1995, Mrs. Richard was working at the McDonalds restaurant which is located inside Wal-Mart in Troy, Ohio. As part of her work duties, Mrs. Richard went into a Wal-Mart storage room where McDonalds had a freezer that was approximately six feet high. While Mrs. Richard was bending over to retrieve food products from the freezer, a cardboard box containing a nineteen inch television fell from Wal-Mart's storage shelving above the McDonalds freezer and struck Mrs. Richard on the right side of her head. It is unclear whether the television fell directly onto Mrs. Richard or hit the freezer first because no one witnessed the incident. After being struck, Mrs. Richard fell to the ground and was knocked unconscious. When she awoke, her glasses were broken and a group of people were surrounding her.
The incident was reported to the McDonalds manager and an accident report was completed. Mrs. Richard finished working her shift and then went home and told her husband of the incident. Mrs. Richard testified that after the incident, she suffered from head, nose, and neck pain. On Sunday, Mrs. Richard went to the emergency room at Stouder Memorial Hospital for a medical examination. The emergency room physician told her that as a result of the incident, she had a severe concussion. A few days later, Mrs. Richard attempted to make an appointment with her regular family physician but was told that he was ill. She was later referred to Dr. Zarraby, but Mrs. Richard testified that Dr. Zarraby did not give her "satisfaction."
In May of 1995, Mrs. Richard went to a chiropractor, Dr. Terry Jones, who performed numerous tests and x-rays on her. Dr. Jones testified that, at his initial examination, he found that the range of motion in Mrs. Richard's neck was less than normal and that she had poor posture. He also felt spasms in the right side of her neck and both sides of her upper back. He concluded that, due to Mrs. Richard's complaint of general pain in the neck area, he "suspect[ed] a sprain strain injury" and nerve damage from displacement of the vertebrae. Dr. Jones then began treating Mrs. Richard regularly. Mrs. Richard filed a workers' compensation claim for her injury and assigned her right to collect benefits to Dr. Jones. Dr. Mark Whitsett, a medical doctor employed by the State of Ohio Bureau of Workers' Compensation ("BWC") and certified by the Board of Independent Medical Examiners, evaluated Mrs. Richard and concluded that she had a ten percent permanent partial disability.
In July of 1995, Mrs. Richard fell off a horse and landed on her tailbone. In January of 1997, she fell down in a field while walking her dog. Mrs. Richard continued working at McDonalds throughout this time.
In March of 1998, Mrs. Richard was evaluated by Dr. Joseph Paley, a Board Certified orthopedic surgeon, at Wal-Mart's request. On June 17, 1998, a videotape deposition of Dr. Paley was taken and this videotape was played for the jury at trial. Dr. Paley testified to a reasonable degree of medical probability that Mrs. Richard had sustained a concussion of the neck and head. He further stated that, because a concussion would usually heal within a few days, he believed that "chiropractic treatment was excessive." He concluded "that chiropractic manipulations would just simply keep [Mrs. Richard's] problem aggravated."
On June 22, 1998, the trial court granted Wal-Mart's motion to join the BWC as a plaintiff in this case. Counsel for the BWC did not appear at trial but did make a stipulation that the BWC had paid $6,382.86 for medical expenses and $1,494.80 for benefits under Mrs. Richard's claim.
On June 30 and July 1, 1998, a jury trial was held. The jury found in favor of Mrs. Richard in the amounts of $130.00 for past medical expenses, $1,000.00 for past pain and suffering, and $1,000.00 for past loss of enjoyment of life. The jury did not award Mr. Richard or the BWC any damages. Accordingly, the trial court entered judgment for Mrs. Richard in the amount of $2,130.00 on July 27, 1998.
The Richards advance eight assignments of error on appeal, which we will address in an order that facilitates our discussion. Because the issues raised in the first and seventh assignments of error are interrelated, we will address them together.
 I. THE JURY FAILED TO FOLLOW THE COURT'S INSTRUCTIONS REGARDING THE PLAINTIFF BEING ENTITLED TO RECOVER FOR THE EXPENSES REASONABLY CAUSED BY THE DEFENDANT'S NEGLIGENCE.
 VII. THE DECISION OF THE JURY FAILED TO ADEQUATELY COMPENSATE THE PLAINTIFF AND WAS MANIFESTLY AGAINST THE WEIGHT OF THE EVIDENCE.
The Richards argue that because the credibility and testimony of their witnesses was not challenged, the jury should have awarded them all of the expenses reasonably incurred from Wal-Mart's negligence. They argue that the jury's verdict was against the manifest weight of the evidence.
A judgment that is "supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276
(citation omitted).
Dr. Paley testified that he did not believe Mrs. Richard had sprained or strained her neck as a result of the incident. He stated that he believed she had suffered a mild concussion, and that this injury should have healed within three to four days. In fact, Dr. Paley testified, "I can lay odds, any amount of odds you want that [Mrs. Richard] never, never had any problem with her neck, dislocations, subluxation or any other chiropractic term." Thus, there was testimony which challenged the testimony of the Richards' medical expert.
The Richards further argue that "[n]othing in the transcript justifies the Jury to find any intervening cause that might have contributed to the injury sustained at the hands of the Defendant." We initially note that nothing in the record affirmatively indicates that the jury relied on Mrs. Richard's intervening injuries when making its award. Moreover, Mrs. Richard herself testified that after the incident at Wal-Mart, she fell off a horse and landed on her tailbone. Dr. Jones testified that when she landed on her tailbone, the force would have traveled directly up the spinal column. Further, when asked, "How would you make a distinction between [the injury resulting from the fall from the horse] and the alleged injury that happened at Wal-Mart," Dr. Jones answered, "There was no distinction made between the two." Thus, there was evidence presented at trial from which the jury could have found that an intervening cause contributed to Mrs. Richard's injury. Because there was competent, credible evidence presented at trial to support the jury's verdict, it was not against the manifest weight of the evidence.
The Richards further argue that "[t]he Jury obviously * * * failed to compensate the Plaintiff for the additional Six Thousand Three Hundred Eighty-Two Dollars and Eighty-Nine Cents ($6,382.89) [sic] expenses that have been incurred on her behalf through the treatment of Dr. Jones, which treatment has been approved and paid for by the Bureau of Workman's Compensation." It appears that the Richards are arguing that they should have been reimbursed for monies paid to Dr. Jones by the BWC. The Richards are not entitled to be reimbursed for monies that they did not originally pay. The BWC is the only party that could be entitled to reimbursement because it was the party who paid the monies. See R.C. 4123.931. Thus, their argument is not persuasive. Furthermore, while medical expenses are a factor that attorneys and insurance adjustors consider in evaluating cases for settlement purposes, the "rules of thumb" utilized for settlement purposes have no application in jury trials.
The first and seventh assignments of error are overruled.
 VI. THE COURT ERRED IN NOT GRANTING AN ADDITUR OR A NEW TRIAL TO THE PLAINTIFFS.
The Richards argue that the trial court erred when it overruled their motion for an additur or a new trial. In support of their argument, they assert:
 The Jury did compensate for the of [sic] Six Thousand Three Hundred Eighty-Two Dollars and Eighty-Nine Cents ($6,382.89) [sic] for care of the Plaintiff provided by Dr. Jones and this clearly established that a Two Thousand One Hundred and Thirty Dollar ($2,130.00) verdict is totally inadequate and should have been modified by the Court and/or a new trial granted to the Plaintiffs.
This argument is unsupported by the record. The jury only awarded $2,130.00 in damages to Mrs. Richard; it did not make an award of $6,382.89.
Following the trial, the Richards made a motion for either additur or a new trial. Based upon the record, it appears that their motion was made pursuant to Civ.R. 59(A)(4) and (6) which allow a trial court to order a new trial if the jury awarded inadequate damages or its verdict is not sustained by the weight of the evidence. "[I]n order to set aside a damage award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputed evidence in the case, or is the result of an apparent failure by the jury to include all the items of damage making up the plaintiff's claim." (Emphasis deleted.) Iames v.Murphy (1995), 106 Ohio App.3d 627, 631, 666 N.E.2d 1147, 1149;Bailey v. Allberry (1993), 88 Ohio App.3d 432, 435,624 N.E.2d 279, 280-281 (citations omitted).
As stated above, the jury's verdict is not against the weight of the evidence. The bulk of the medical expenses paid by the BWC were for chiropractic treatment. The jury obviously credited Dr. Paley's testimony that Mrs. Richard's chiropractic treatment was excessive. Thus, the award of $2,000.00 for past pain, suffering, and enjoyment of life can be reconciled with the approximately $6,500.00 expended for medical treatment. Further, from our review of the record, we cannot conclude that the jury's verdict "shock[ed] the sense of justice and fairness." Thus, the Richards' argument that the trial court should have granted an additur or new trial is not persuasive.
The sixth assignment of error is overruled.
 II. THE COURT ERRED IN ADMITTING DR. PALEY'S TESTIMONY, WHICH WAS TAKEN WITHOUT NOTICE TO THE ATTORNEY GENERAL AS COUNSEL FOR THE BUREAU OF WORKMAN'S COMPENSATION. THIS ALSO PREJUDICED THE PLAINTIFF WHEN THEY DID NOT SHOW UP OR PARTICIPATE IN THE TRIAL.
The Richards argue that they were prejudiced when the videotape deposition of Dr. Paley was taken without notice to the BWC. The Richards claim that because they were prejudiced, the trial court erred when it admitted Dr. Paley's videotape deposition at trial. The Richards further argue that the BWC's failure to participate was prejudicial to them because it caused their claim to be "mitigated to the extent of [their] out-of-pocket costs."
In our review of the record, we are unable to conclude that the BWC did not have notice of the deposition of Dr. Paley. The record demonstrates that the BWC did have notice of the trial and chose not to appear, but instead sent a stipulation that was read to the jury. Thus, it is possible that the BWC did have notice of the deposition of Dr. Paley but chose not to appear. Moreover, and more important, the Richards do not have standing to challenge whether notice was given to the BWC. The record illustrates that the Richards' attorney did have notice of the deposition and that he attended the deposition and questioned Dr. Paley.
The admission of videotaped expert testimony is within the sound discretion of the trial court. Ratliff v. Stewart (July 24, 1989), Butler App. No. CA88-07-109, unreported, at *4. We will not disturb the trial court's determination that Dr. Paley's testimony was admissible unless the trial court abused its discretion. Id. An abuse of discretion is more than an error of law; it implies that the court acted unreasonably, arbitrarily, or unconscionably. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140, 1142.
"All relevant evidence is admissible." Evid.R. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Dr. Paley's testimony was relevant to the case because it directly contradicted the testimony of the Richards' witnesses. Thus, we cannot conclude that the trial court acted unreasonably, arbitrarily, or unconscionably in admitting Dr. Paley's videotape deposition.
The Richards further argue that they were prejudiced when the BWC failed to participate in the trial. Specifically, they assert that the BWC's failure to participate caused the jury to "mitigate" Mrs. Richard's damages award. Because there is nothing in the record to indicate that the jury's award to Mrs. Richard was in any way connected to the BWC's failure to participate, we conclude that their argument is mere speculation and thus, not persuasive.
The second assignment of error is overruled.
 III. THE COURT FAILED TO SUSTAIN THE OBJECTIONS TO DR. PALEY'S CONTINUED VOLUNTARY STATEMENTS, WHICH WERE HIGHLY PREJUDICIAL TO THE PLAINTIFF'S CASE.
The Richards argue that the trial court erred when it failed to sustain their objections during Dr. Paley's testimony. They assert that they made numerous objections during Dr. Paley's testimony and that none of these objections were ruled upon by the trial court.
The videotape deposition of Dr. Paley's testimony was taken before the trial and was played to the jury during the trial. According to the record, before the videotape played, the trial judge announced to the jury that he had already viewed the tape and thus was leaving the courtroom while the tape played to work on the jury instructions which he planned to give to the jury later that day. He asked both parties whether they objected to him leaving the courtroom and both said, "No, Your Honor."
During the taking of Dr. Paley's videotape deposition, the Richards' attorney had made numerous objections. Although the Richards argue that the judge did not rule on the objections, our review of the record indicates that while giving preliminary instructions to the jury, the trial judge stated the following:
 During the trial a videotape will present some testimony. This evidence is to be considered according to the same rules that apply to other witnesses as though they gave the questions and answers on the video testimony here in Court.
 I instruct you to disregard any audio deletions apparent in the playing of the videotape. Those are due to my rulings. (Emphasis added.)
Therefore, the record supports the conclusion that the trial judge did rule on the objections prior to the playing of the tape.
Moreover, the Richards had the burden of making sure that the trial court addressed their objections. See Reed v. MTD Products,Inc. (1996), 111 Ohio App.3d 451, 460-461; 676 N.E.2d 576,582-583, discretionary appeal not allowed (1996) 77 Ohio St.3d 1472,673 N.E.2d 137. Rule 13 of the Rules of Superintendence for the Courts of Ohio states:
(A) Videotape Depositions.
* * *
 (11) Filing Where Objections Made. When a deposition containing objections is filed with the court * * *, it shall be accompanied by the officer's log of objections. A party may request that the court rule upon the objections within fourteen days of the filing of the deposition or within a reasonable time as stipulated by the parties.
* * *
* * *
 (15) Objections at Trial. Objections should be made prior to trial, and all objections shall be made before actual presentation of the videotape at trial. If an objection is made at trial that has not been waived pursuant to Civil Rule 32(D)(3) or previously raised and ruled upon, the objection shall be made before the videotape deposition is presented. The trial judge shall rule on objections prior to the presentation of the videotape. If an objection is sustained, that portion of the videotape containing the objectionable testimony shall not be presented. (Emphasis added.)
Thus, the Richards were required to assure that their objections during Dr. Paley's testimony were addressed by the trial court before the videotape was presented to the jury. To the extent they may have failed to do so, they have waived for appeal purposes any failure of the trial court to rule on their objections.
The third assignment of error is overruled.
 IV. THE COURT ERRED IN PERMITTING DR. PALEY'S TESTIMONY AS AN EXPERT OPINION BASED ON HYPOTHETICAL STATEMENTS WHICH WERE NOT BASED ON EVIDENCE SUBMITTED AT THE TRIAL. THERE WAS NO EVIDENCE THAT THE PLAINTIFF SUSTAINED ANY INTERVENING INJURY EITHER FROM A FALL FROM A HORSE OR FROM A TWISTED KNEE WHILE WALKING IN THE FIELD.
The Richards argue that, because Dr. Paley's deposition was taken before trial, "the premise upon which the Defense counsel laid grounds for hypothetical statements was prejudicial to the Plaintiff in that the testimony did not substantiate the hypothetical statements presented to and allowed to be expanded upon by Dr. Paley." Specifically, the Richards argue that there was no testimony that Mrs. Richard incurred an intervening injury when she fell off the horse or while walking her dog.
Initially, we note that, as stated above, the Richards had the burden of making sure the trial court ruled on their objections to Dr. Paley's testimony before the videotape was presented to the jury. Furthermore, from our review of the record, we believe that there was evidence presented at trial from which the jury could have concluded that Mrs. Richard did sustain an intervening injury following the Wal-Mart incident. Mrs. Richard testified that when she fell from the horse, she injured her tailbone. Dr. Jones testified that he could not make a distinction between the injuries she received from the Wal-Mart incident and those she received from falling off the horse. Thus, the Richards' argument is not persuasive. Mrs. Richard also testified that she fell while walking her dog, but injuries from that fall were not discussed in significant detail during the trial.
The fourth assignment of error is overruled.
 V. THE COURT ERRED IN PERMITTING IMPROPER RE-CROSS EXAMINATION BY THE DEFENDANTS WHEREIN DR. PALEY IN HIS DEPOSITION IDENTIFIED AND ADMITTED INTO EVIDENCE X-RAYS TAKEN BY DR. PALEY, WHICH WERE NOT PRODUCED IN DIRECT EXAMINATION AND NOT BROUGHT INTO QUESTION ON CROSS EXAMINATION.
The Richards' entire argument under this assignment of error is as follows:
 In Dr. Paley's direct examination he did not discuss or present x-rays which he had taken in his examination. There was no testimony or questions propounded in cross examination that would justify the Defense counsel in re-opening the examination to allow Dr. Paley to testify and offer his x-rays and discuss the same for the benefit of the Jury. Objection was duly noted on Pg. 242 in the transcript.
 The Court failed to exclude the testimony and again prejudiced the Plaintiff, by giving more weight to Dr. Paley's already incredible testimony.
(Emphasis sic).
Dr. Paley was a witness for Wal-Mart, so the Richards' own attorney conducted the cross examination of him. From the record, it appears to us that the Richards intend to argue that the trial court erred when it allowed Wal-Mart's attorney to question Dr. Paley about his x-rays on redirect examination. Put differently, the word "re-cross" in the assignment of error should be "redirect." We will address this assignment of error under this assumption.
"The scope of redirect examination is limited to matters inquired into by the adverse party on cross-examination." Michamv. Micham (Sept. 30, 1998), Lucas App. No. L-97-1308, unreported, at *4. The limits of inquiry on redirect are, however, within the discretion of the trial court and the court's ruling will not be disturbed unless there was an abuse of that discretion. Micham,supra, at *5; Armstrong v. Kittinger (Sept. 21, 1994), Summit App. Nos. 16124, 16378, unreported, at *5. "To have abused its discretion, the trial court must have acted in a manner that was `grossly violative of fact and logic so as to demonstrate perversity of will, defiance of judgment, undue passion, or extreme bias.'" Micham, supra, at *5 (quoting Deans v. AlleghenyInternat'l. (USA), Inc. (1990), 69 Ohio App.3d 349, 253,590 N.E.2d 825, 826).
The record shows that during cross examination, the Richards' attorney asked Dr. Paley numerous questions about what he had concluded from his x-rays of Mrs. Richard. The Richards' attorney also questioned Dr. Paley on x-rays' ability to reveal healed fractures and dislocations.
During redirect examination, the record indicates that in response to questions from Wal-Mart's attorney, Dr. Paley apparently got the x-rays out and started using them to indicate to the jury how he had concluded that Mrs. Richard had suffered no fractures or dislocations. The thrust of the Richards' argument seems to be that the trial court should not have allowed Dr. Paley to utilize his x-rays in front of the jury.
The Richards' attorney discussed the x-rays with Dr. Paley during cross examination, so they were within the scope of redirect examination. Further, Dr. Paley utilized the x-rays during redirect examination to show the jury that there were no dislocations or fractures-an issue first raised in detail on cross examination. Thus, we cannot conclude that the trial court abused its discretion when it allowed the x-rays to be shown to the jury.
The fifth assignment of error is overruled.
 VIII. THE JURY FAILED TO COMPENSATE MICHAEL RICHARD FOR HIS LOSS OF CONSORTIUM.
The Richards argue that "[t]he Jury having found in favor of the Plaintiff and against the Defendant and having compensated her for pain and suffering and loss of enjoyment of life, needed to, out of necessity also find for her husband whose testimony was uncontradicted and substantiated that he was entitled to * * * a loss of consortium."
Although "a loss of consortium claim is derivative in that it is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury, * * * it is nonetheless legally separate and independent from the claim of the spouse who suffered the bodily injury." Schaefer v. AllstateIns. Co. (1996), 76 Ohio St.3d 553, 557, 668 N.E.2d 913, 916-917
(citation omitted). Because it is separate and independent, the spouse claiming loss of consortium must provide evidence of his or her own injury beyond his or her spouse's injury. See id.
At trial, Mr. Richard testified that he still mows the lawn, as he did before the incident, and that Mrs. Richard still does the laundry, gets the kids "out the door," walks and feeds the horses, and watches the kids participate in activities and sports, as she did before the incident. At most, the record reveals that Mr. Richard did a little more housework and that the Richards' sexual relations had "changed a little bit" as a result of the incident. Based on this minimal evidence, as well as the evidence that Mrs. Richard had not been seriously injured, it was well within the province of the jury to refrain from awarding damages to Mr. Richard for loss of consortium.
The eighth assignment of error is overruled.
As all eight of the Richards' assignments of error have been overruled, the judgment of the trial court will be affirmed.
FAIN, J. and YOUNG, J., concur.
Copies mailed to:
Thomas J. Buecker
Stephen P. O'Keefe
Hon. Jeffrey M. Welbaum