OPINION
In the first of these consolidated appeals, appellant LTV Steel Company "LTV" claims error by Visiting Common Pleas Judge Ralph McAllister in assuming jurisdiction over appellee James Ciomek's claim for participation in the compensation system because of alleged work-related injuries not previously brought to the attention of the Industrial Commission but ruled upon by the jury. LTV also contends in the second of these appeals that Judge Janet Burnside, originally assigned to the case, improperly denied its pre-trial motion to dismiss Ciomek's injury claims not specifically identified and considered at the administrative level because she too lacked subject matter jurisdiction. Additionally, LTV also challenges various evidentiary rulings made either during the course of trial or upon pre-trial motions in limine. While we disagree with LTV's evidentiary arguments, we agree, in part, that the court of common pleas lacked jurisdiction to determine participation for some of Ciomek's injury claims. We affirm in part, reverse in part, and remand with directions.
Ciomek had been employed by LTV and its predecessor since 1974, and performed a variety of work activities. On January 18, 1993, he and a co-worker were using a cable to remove metal bands from a pit in the roll shop. Coils of steel are encased in these bands and then sent to the shipping department. Occasionally the bands would break or fall off the coils and wind up in a pit which would be cleaned out once a week. The cable would be used to connect the bands to a crane for removal. Ciomek testified that Geraldine Bennett, his co-worker, was having difficulty pulling the cable out of the pit as the cable seemed to be "hung up on something." Ciomek then tried to free it:
 And I pulled it real hard. It was like playing tug of war with someone and somebody letting go on the other end when I was pulling as hard as I could.
 And when it jerked back, the cable came out. And that's what happened with the cable. And I actually felt like I cracked a rib is what it felt like, because my neck and chest hurt every time I breathed in.
Bennett testified she observed Ciomek pulling on what appeared to be an electrical extension cord and then complain of back pain.
Ciomek reported the injury to his foreman who sent him to the dispensary. The dispensary personnel failed to diagnose any injury and returned him to work. Ciomek continued to complain of pain and obtained a pass from his foreman to leave work. He then visited the emergency room at what is now called Meridia Euclid Hospital and, after an examination and x-rays, testified he was given the names of three back specialists, including that of Dr. Louis Maggiore.
On January 20, 1993, Ciomek was seen by Dr. Maggiore, who started him on a course of physical therapy and medication, and who later referred him to Dr. Anschuetz, an orthopedic surgeon. On that same day, Ciomek endorsed an application for compensation and benefits with the Bureau of Workers' Compensation, indicating the "nature of the injuries" and "parts of body affected" by the January 18, 1993 incident to be "[l]ow back, pains down left leg, right middle back and left shoulder." The Bureau assigned it No. L22854-22.
The medical records of Dr. Maggiore presented to the Bureau provide the following, in pertinent part:
 2-24-93 The strain to the anterior intercostal muscles of the chest are [sic] resolving by itself, but the spasm and tenderness of the cervical, thoracic and lumbar spine are getting worse, undoubtedly due to the lack of available PT. On exam the cervical and lumbosacral lordotic curves are flattened and spasm and tenderness could be appreciated the entire length of the column. Appropriate documentation has been sent to LTV and until then he will just have to stay off work and take his medication. * * *
* * *
 4-05-93 * * * He has total flattening of the lumbar spine. He is tender throughout the entire back, the left side particularly. He now complains of a lot of pain radiating down the leg. * * * Very strong Lasaque's test on the left side, negative on the right. Could not perform the Fabere's. He simply could not bend his knees. The cervical spine is worse. [H]e still has a lot of crepitations. There is a lot of cracking when he moves his neck around. It is not as bad spasm wise and it is still less than the lower back. * * *
 4-19-93 * * * He has had a relapse with severe sciatic type pain, but it has started to subside. The neck is a little bit better than it was last visit. * * *
 5-10-93 * * * He is having back pain with pain down the left leg. He continues with the same restricted ROM. The neck is no better. * * *
* * *
 7-14-93 * * * There is no question he has pain down the back of the leg which is most likely sciatica due to herniated disc. * * *
 8-09-93 No particular change. * * * He still has constant back pain and pain down the leg. He wakes in the morning with broad low back pain that clears up to some extent during the day. The shoulder and the neck are about back to where it was when he first came in. The mid back seems to be the only area that has not relapsed entirely.
* * *
The claim was contested by LTV and hearings held. On December 13, 1993, the district hearing officer issued an order allowing Ciomek's claim for "mild sprain, lumbar spine; mild sprain left shoulder" but disallowed claims for injuries to the left leg, thoracic spine and bilateral intercostal muscle strain noting the lack of " sufficient medicals diagnosing same and casually relating same to the within claim" and "medicals diagnosing same are not persuasive". The order also disapproved a request for an MRI examination and physical therapy, which Dr. Maggiore had recommended, and denied Ciomek any compensable lost time. The order noted the decision was based upon the reports of Drs. Katz and Kovach containing opinions that Ciomek's physical condition did not warrant any time away from his work. Both Ciomek and LTV appealed the decision.
Despite the lack of authorization, Ciomek chose to undergo the MRI and later, on May 4, 1994, he submitted another medical report from Dr. Maggiore, dated April 30, 1994, which noted that an MRI performed on March 23, 1994, revealed a mild narrowing of the L5-S1 disc space, and, "early degeneration of the L4 disc which would coincided with the one-plus year history of the accident". It further stated that "the bulging of the L4 disc has caused canal stenosis which is responsible for the sciatic pain". A copy of the MRI report, as interpreted by Dr. Adrian G. Krudy, Jr., M.D. accompanied this report. Dr. Maggiore authored a supplemental report, dated May 2, 1994, which set forth objective findings of "[t]enderness and spasm low back[;] MRI-L4 disc and mild disc bulging of L4 W moderate canal stenosis". It stated a "current diagnosis" of "acute cervical, thoracic, lumbar * * *" but provided no further explanation. The LTV Steel file stamp on this supplemental report shows the date of receipt as May 10, 1994.
The staff hearing officer denied both appeals on May 4, 1994, the same day Ciomek submitted Dr. Maggiore's initial report with the MRI data, and affirmed the Order of December 13, 1993. Both parties then appealed to the Industrial Commission which ordered that both appeals be refused.
Ciomek filed his notice of appeal with the Cuyahoga County Common Pleas Court (Case No. 277591) on September 27, 1994, and LTV filed its notice of appeal (Case No. 277845) three days later. Both were consolidated on the docket of Judge Burnside.
Ciomek later filed a motion with the Commission requesting a further allowance on Claim No. L222854-22 for "mild disc narrowing of the L5-S1 disc space, early degeneration of the L-4 disc, bulging of the L-4 disc, moderate canal stenosis, and mild disc bulging in left paramedian position at the L-3 level".[1] This motion contained no mention of the neck injury or "cervical strain" or herniated disc, L4-5. Ciomek conceded that the commission had not ruled upon that motion and, as of the date of oral argument before this court, that motion is still pending.
On July 19, 1996, Ciomek dismissed Case No. 277591 without prejudice. The judge sua sponte dismissed No. 277845 on July 19, 1996 and again on August 2, 1996, but, sua sponte, entered another order on August 12, 1996 which "corrected the error" and reinstated the LTV case.
On June 20, 1997, Ciomek re-filed his notice of appeal; it was assigned Case No. 336328, and, eventually, consolidated with the still pending Case No. 277845 on Judge Burnside's docket. Ciomek alleged and sought participation for the same injuries he had claimed in Case No. 277591: a) mild sprain, left shoulder; b) mild sprain, lumbar spine; c)injury to thoracic spine; d) injury to left leg; e) narrowing of L-S1 disc space; f) early degeneration of L4 disc; g) bulging of the L4 disc, causing canal stenosis; and h) bilateral intercostal muscle strain, but added i) herniated disc L4-L5 — a condition LTV claimed was never presented to the Commission.
On May 4, 1998, LTV renewed a partial motion to dismiss which it had previously filed in the prior Case No. 277591.[2] LTV claimed in that motion that the court lacked jurisdiction over Ciomek's claimed injuries that had not been specifically allowed or disallowed by the Commission and, moreover, that Ciomek's July, 1995 motion to the commission for further allowance of injuries/conditions, which conditions were also delineated in his complaint seeking participation under the worker's compensation act, was still pending before the district hearing officer. The May 4, 1998 journal entry indicates the judge, who had denied this same motion in the earlier Case No. 277591, denied LTV's "re-renewed" oral motion to dismiss "w/add'l grounds (testimony of Dr. Maggiore)."
The case was transferred to Judge McAllister and a jury on May 5, 1998. At trial, Ciomek admitted on direct examination to previous on-the-job injuries: on one occasion, to puncture wounds to his hands and, on another occasion, to a shoulder strain in 1976, when the crane bounced after depositing a slab of steel and he fell from a chair in the cab and against its window. He also admitted that he had sustained a neck injury in 1991 as a result of an automobile accident.
Upon cross-examination, he further elaborated upon these injuries and admitted, as a young man, fracturing both shoulders in an automobile accident. He also admitted not working for three months because of the 1991 neck injury. He agreed that he had ongoing problems with his shoulder and lower back five or six years after the crane incident.
Ciomek presented the testimony of his treating physicians and LTV, that of Drs. Martin and Kovach. The content or weight of their testimony is not in dispute although, obviously, the relationship between the 1993 cable/cord incident and the injuries claimed was in conflict.
At the conclusion of trial, the judge, with Ciomek's consent, directed a verdict in favor of LTV for the conditions described as "`mild sprain, left shoulder; injury to left leg; narrowing of the L5-S1 disc space; early degeneration of the L4 disc; bulging of the L4 disc causing canal stenosis; and mild disc bulging in the left paramedial position at the L3 level." As reflected in the interrogatories, the jury returned its verdict allowing Ciomek to participate under the "Workers' Compensation Act for the conditions described as `cervical strain; thoracic sprain; lumbar strain; bilateral intercostal muscle strain; and herniated disc, L4-5.'" The judge documented the foregoing in a journal entry dated May 11, 1998.
LTV asserts six assignments of error.
 ASSIGNMENT OF ERROR NUMBER SIX APPLICABLE TO APPELLATE CASE NO. 74647.
 THE TRIAL COURT LACKED SUBJECT MATTER JURISDICTION ALTOGETHER OVER CASE NO. 336328, SINCE NO TIMELY NOTICE OF APPEAL WAS FILED IN THAT CASE.
Should this Court find LTV's sixth assignment of error well taken, the remaining assignments of error would be moot. We will, therefore, consider the this assignment first.
LTV claims that the court lacked subject matter jurisdiction over Ciomek's appeal in Case No. 336328 because he dismissed his complaint and notice of appeal in Case No. 277591 on July 2, 1996 and filed a new notice of appeal and new complaint (claiming a herniated disc) which could not be intended as a re-filing of the notice in that original action. LTV claims that the notice and complaint filed in Case No. 336328, on June 20, 1997, is outside the sixty-day statutory requirement set forth in R.C. 4123.51.2 which requires that the initial appeal from the decision of the Commission be filed within that time frame. Because of this untimely filing the court lacked subject matter jurisdiction to consider Ciomek's appeal.
Ciomek contends that when he properly dismissed his complaint in his appeal numbered 277591, he also dismissed his complaint in LTV's appeal numbered 277845. By operation of law, he argues, dismissal of the actions does not dismiss the notices of appeal filed in both cases. Therefore, his notice of appeal in the re-filed case, No. 336328, was a nullity since the re-filing of his complaint related back to the time of his original notice of appeal.
Section 4123.51.2 (A) of the Revised Code provides that, within sixty days after the date of the receipt of an order of the Industrial Commission, a party must file a notice of appeal with the court of common pleas to perfect an appeal from the order. The filing of the notice of appeal vests the court of common pleas with jurisdiction over the appeal. Singer Sewing Mach. Co. v. Puckett
(1964), 176 Ohio St. 32, 197 N.E.2d 353, paragraph two of the syllabus; Whitehurst v. Perry Twp. (1996), 114 Ohio App.3d 729,735, 684 N.E.2d 96, appeal dismissed (1997), 79 Ohio St.3d 1209,680 N.E.2d 1004. Once the employer or claimant files the notice of appeal, the claimant must file his or her petition which sets forth the facts showing a cause of action to participate or to continue to participate in the fund and sets forth a basis for the jurisdiction of the court over the action. R.C. 4123.51.2 (D). The claimant's filing of his or her petition is not jurisdictional.Puckett, supra; Whitehurst, supra.
The Supreme Court recently held in Kaiser v. Ameritemps, Inc.
(1999), 84 Ohio St.3d 411, 412, 704 N.E.2d 1212, that "[a] workers' compensation claimant may employ Civ.R. 41 (A) (1) (a) to voluntarily dismiss an appeal to the court of common pleas brought by an employer under R.C. 4123.51.2". It noted that "[t]he voluntary dismissal of the claimant's complaint does not affect the employer's notice of appeal, which remains pending until the re-filing of claimant's complaint". Id. at 415. It would then follow that the voluntary dismissal of the claimant's complaint does not affect the claimant's notice of appeal, which would remain pending until the re-filing of the complaint.[3] In other words, once the jurisdiction of the court of common pleas is properly perfected by either party under R.C. 4123.51.2 (A), the claimant's voluntary dismissal pursuant to Civ.R. 41 (A) (1) (a) has no effect upon that jurisdiction. Because Ciomek's timely notice of appeal "remained pending" after he dismissed Case No. 277591, LTV's argument that the trial court lacked jurisdiction due to the untimeliness of there-filed notice of appeal in Case No. 336328 is without merit.
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT LACKED SUBJECTMATTER JURISDICTION TO DETERMINE PLAINTIFF'S RIGHT TO PARTICIPATE OR TO CONTINUE TO PARTICIPATE FOR ANY CONDITIONS OTHER THAN LUMBAR STRAIN, THORACIC STRAIN, BILATERAL INTERCOSTAL MUSCLE STRAIN, LEG INJURY AND SHOULDER INJURY, AND THE COURT'S ASSUMPTION OF JURISDICTION OVER OTHER CONDITIONS WAS ERROR TO THE PREJUDICE OF DEFENDANT-APPELLANT.
LTV asserts that the court should not have allowed Ciomek to proceed to trial upon injuries/conditions that were neither allowed nor disallowed by the Industrial Commission. Specifically, it contends, two injuries presented to and allowed by the jury — "cervical strain" and "disc herniation at L4-5" — not only pertained to different body parts than those reviewed by the commission, they also involved injuries of a different nature. Because the Industrial Commission never even considered whether Ciomek could participate in the fund for these injuries, LTV claims that the court of common pleas did not have subject matter jurisdiction over them and the jury should not have considered the issues. LTV points out that Ciomek never applied for benefits for a neck related condition or pleaded "cervical strain" in any of the complaints. Moreover, he did not plead "disc herniation at L4-5" until he filed Case No. 336328 in 1997 and, by that time, the two year statute of limitations requiring notice to the commission of both injuries/conditions, under R.C. 4132.84, [4123.84], had expired. Therefore, LTV asserts, the judge erred when she failed to grant LTV's motion to dismiss.
Ciomek counters that, contrary to LTV's argument, the legislature contemplated that new questions relating to a work-related injury may surface after a claimant has filed a petition and, therefore, provided for a de novo review of a workers' compensation appeal by the court of common pleas. Thus, "new" issues which relate to the allowed injury may be considered even though they were not specifically addressed by the commission. Ciomek urges this court to affirm the judge's denial of LTV's motion to dismiss his claim for these particular injuries.
"`Courts of Common Pleas do not have inherent jurisdiction in workmen's compensation cases but only such jurisdiction as is conferred under the provisions of the Workmen's Compensation Act.'" Breidenbach v. Mayfield (1988), 37 Ohio St.3d 138, 140,524 N.E.2d 502, quoting Jenkins v. Keller (1966), 6 Ohio St.2d 122,216 N.E.2d 379, paragraph four of the syllabus; LTV Steel Co.v. Gibbs (1996), 109 Ohio App.3d 272, 275, 671 N.E.2d 1360. Section 4123.51.2 (A) of the Revised Code confers limited jurisdiction upon the court of common pleas, providing that either the claimant or employer may appeal an order of the Industrial Commission other than a decision which addresses the extent of the disability. Such order is subject to a denovo review through which the judge or a jury determines the claimant's right to participate in the fund upon the evidence adduced at trial. R.C. 4123.51.2 (C); Afrates v. Lorain
(1992), 63 Ohio St.3d 22, 26, and paragraph one of the syllabus,584 N.E.2d 1175; Felty v. ATT Technologies, Inc. (1992), 65 Ohio St.3d 234, 602 N.E.2d 1141, paragraph one of the syllabus; Gibbs,109 Ohio App.3d at 275.
"A decision by the commission determines the employee's right to participate if it finalizes the allowance or disallowance of an employee's claim." Felty, supra at 239. "A `claim' in a workers' compensation case is the basic or underlying request by an employee to participate in the compensation system because of a specific work-related injury or disease." Id. When a claimant applies for benefits for his or her injury claim, the application must "include the specific part or parts of the body alleged to have been injured." Ohio Admin. Code 4123-3-08 (D) (1); see Ohio Admin. Code4121-3-09 (C) (5). Any claim for "compensation or benefits for the specific part or parts of the body injured shall be forever barred unless, within two years after the injury * * *" the claimant provides written notice of the specific part or parts of the body claimed to have been injured to the commission or the bureau and the employer. R.C. 4123.84 (A). Once the Industrial Commission determines that a claimant may participate in the workers compensation system for a specific condition, the parties may not appeal a subsequent ruling to the court of common pleas, except one that terminates a claimant's right to participate. Felty, supra at paragraph two of the syllabus.
Interestingly, both Ciomek and LTV find support for their respective positions through the same case authority from this court and other courts of appeal. Ciomek, however, bases the majority of his arguments upon authority from other jurisdictions, while LTV relies upon decisions from this court. Ciomek first directs us to Grant v. Ohio Dept. of Liquor Control (1993),86 Ohio App.3d 76, 619 N.E.2d 1165, motion to certify overruled (1993), 66 Ohio St.3d 152, [66 Ohio St.3d 1502], 613 N.E.2d 647, to support his proposition that he may assert new issues about a work-related injury upon appeal. In that case, Grant, while employed at a state liquor store in 1983, had been the victim of two armed robberies within a period of one year and sought compensation for an "Anxiety Reaction" to the "Mind." The district hearing officer denied the claim, finding that it was not compensable under R.C. 4123.01 (C) without a contemporaneous physical injury.
Upon appeal to common pleas court, she moved to amend her complaint to allege that she sustained a mental/emotional condition resulting from physical injuries to her hand and arm and a physical injury manifested by an ulcer resulting from her mental or emotional condition. The judge denied the motion and later granted the commission's motion for summary judgment.
On review, the first district appellate court concluded that an appeal from a determination of the Industrial Commission concerns a de novo review of both the law and the facts. Grant,supra, at 81. As a result, legal and evidentiary proof of the right to participate is not limited by R.C. 4123.51.2. Id. The authority in that section allowing parties to take depositions and file them with the court "suggests that the legislature contemplated new issues might well surface during the discovery process and, as a matter of judicial economy, intended to allow their adjudication during the trial de novo." Id. The court of appeals noted that "[d]espite the new allegation that the condition was caused by a contemporaneous physical injury, the claim continued to be for posttraumatic stress syndrome, the same condition she asserted at the Industrial Commission." Id. at 84. The court concluded the judge had abused his discretion when he denied Grant's motion to amend her complaint because the posttraumatic stress syndrome diagnosed by her doctor was not an attempt to raise a new condition in the common pleas court. It is important to note that Grant did not seek to recover for her physical injuries; she sought only to support her psychic injuries for which the Commission originally denied participation.
The first district court of appeals broadened the rule announced in Grant in Faulkner v. Administrator (Aug. 7, 1998), Hamilton App. No. C-970724, unreported, allowing the court of common pleas to consider "new" conditions upon appeal from the Industrial Commission. In Faulkner, the Bureau had allowed Faulkner's claim for "left-leg-joint effusion," but denied his motion to amend his claim, filed eight months after the injury, to include "internal derangement of the left knee." Upon appeal to the court of common please, the judge allowed him to amend his petition to request participation for internal derangement of the left knee and other conditions affecting the left leg, the same body part associated with his original claim, which were noted by his physicians in their reports submitted to the Commission before
he filed his appeal. The court of appeals concluded that, even though the Bureau had not passed upon the other conditions affecting the left knee, the judge did not abuse his discretion in allowing Faulkner to assert the request for participation for these additional claims because of the futility of making further requests for allowance of these additional conditions since the Bureau had previously denied his request to amend his original claim.
The first district court also noted that its Faulkner decision was "exactly in line" with the holding rendered by the sixth appellate district in Reed v. MTD Products, Inc., MidwestInd. (1996), 111 Ohio App.3d 451, 676 N.E.2d 576, that had also utilized the reasoning of Grant. In Reed, the Commission allowed Reed the right to participate in the fund for claims of strain of the right hip and low back, and contusions of the right hip, right pelvis, and right. Upon the employer's appeal, the Huron County Court of Common Pleas granted Reed's motion to amend her complaint to include allegations that the work-related injury caused the exacerbation of a preexisting arthritic condition in her right hip which necessitated a hip replacement. The employer had opposed the motion and filed its own motion in limine, arguing that there was no administrative order either granting or denying her right to participate in the fund for that condition. The court denied the motion in limine. The jury concluded that she could participate in the fund for the exacerbation of the preexisting arthritic condition of the right hip, a strain to the right hip and lower back, and contusions to the right arm and right leg, but it disallowed her claims for contusions of the right hip and right pelvis.
Upon its review, the court of appeals adopted, in toto, the decision in Grant, specifically overruling an earlier decision to the contrary. It held that the judge did not abuse his discretion when he allowed the claimant to amend her complaint to include allegations of an exacerbation of the arthritic condition in her right hip. Unlike Faulkner, Reed's claim had been allowed by the Bureau. Reed made no showing that the act of seeking an additional allowance at the administrative level for this condition would be futile.
LTV suggests support for its contentions through decisions by this court. In McKenney v. Hillside Dairy Co. (1996), 109 Ohio App.3d 164, 671 N.E.2d 1291, McKenney was struck by an overhead garage door on September 8, 1989. In 1992, the Industrial Commission allowed the following claims: (1) laceration of the left lateral orbit, (2) abrasion to scalp; (3) contusion to skull; (4) traumatic iritis of the left eye; (5) cerebral concussion; (6) post concussion syndrome; (7) strain and/or myofascitis of the cervical area; (8) strain and/or myofascitis of the lumbar area; and (9) post-traumatic headaches. Contesting that decision, Hillside disputed only the last five conditions.
At trial, McKenney's expert discussed a "post-traumatic stress" condition. Before final argument, McKenney requested leave to amend his complaint to conform to the evidence and include a claim for post-traumatic stress disorder, and he asked the court to instruct the jury accordingly. The judge denied the motion.
On appeal, McKenney argued that his post-traumatic stress disorder had evolved from his concussion and post-concussion syndrome. This court noted that "[n]o claim had ever been made administratively for the condition of post-traumatic stress disorder." Id. at 169. We further found "no evidence or claim that plaintiff has ever asked in any way, shape or form for an allowance for post-traumatic stress disorder," which would have placed the self-insured employer on notice of such claim within the two-year limitations period set forth in R.C. 4123.84. Id. at 174. We also noted that the mere mention of such a condition in a doctor's report does not constitute a request by the claimant for recognition of that condition. Id. Without specifically addressing the question "whether such a `flow through' mental injury may be introduced on appeal de novo," we concluded that the claim was barred by R.C. 4123.84 (C) for lack of notice. Id. at 173-174. We noted, parenthetically, that had the judge allowed the amendment, McKenney failed to offer any testimony of a licensed psychiatric specialist or clinical psychologist to provide medical proof of the disorder.
Although our conclusion that the claim was barred pursuant to R.C. 4123.84 (C) is no longer valid law,[4] McKenney and other decisions rendered by this court are instructive. Our review of these cases shows that, while keeping in mind the de novo nature of the administrative appeal and the concept of judicial economy, this court has endeavored to safeguard the jurisdiction of the Bureau and Industrial Commission lest the courts of common pleas overstep their statutorily limited jurisdiction. See Walczak v. Van DornCo. (Sept. 26, 1996), Cuyahoga App. No. 69970, unreported (industrial injury not claimed before Industrial Commission not subject to review on appeal); Airtron, Inc. v. Quesenberry (Mar 3, 1994), Cuyahoga App. No. 64738, unreported (court of common pleas has no jurisdiction over matters which were then pending and undecided by the Industrial Commission); Brooks v. The BrostFoundry Co. (May 2, 1991), Cuyahoga App. No. 58065, unreported (court of common pleas has no subject matter jurisdiction over claims "which the Bureau has not yet decided and has held in abeyance pending further medical proof.") Therefore, we conclude that the court of common pleas, pursuant to the authority contained in R.C. 4123.51.2, has jurisdiction to consider whether a claimant may participate in the workers' compensation fund under the following circumstances. First, the conditions or diagnoses for which the claimant seeks judicial determination of his right to participate must relate to the specific body part or parts alleged to have been injured in the claimant's application. Second, the Commission must have specifically considered and rejected the request for participation for those specific injuries/conditions, or the Commission must have rejected in toto the claim for conditions or diagnosis to that specific body part or parts. In other words, while R.C. 4123.51.2 provides for a de novo review of the question whether the claimant may participate in the workers compensation system, the de novo review is limited to the specific body part or parts alleged to have been injured as the result of a work-related accident in the initial claim. As such, the court of common pleas then may consider whether the claimant may participate in the workers' compensation system for any condition — regardless of whether it was considered at the administrative level — attributed to the specified body part or parts as listed in the claimant's application for benefits and as long as the Commission has rejected participation for that body part or parts.[5] E.g.,Faulkner, supra,; see Grant, 86 Ohio App.3d at 84. This rule promotes both administrative and judicial economy.
The court of common pleas does not have jurisdiction, however, to consider whether the claimant may participate in the workers' compensation system for conditions attributed to a body part or parts which have not been identified in the claimant's application for benefits.[6] Cf. Walczak, supra (application for death benefits identified different injury from that injury asserted on appeal).
Ciomek's January 20, 1993 C-50 claim form indicates the "nature of injuries" and "parts of body affected" by the January 18, 1993 incident to be "[l]ow back, pains down left leg, right middle back and left shoulder." Most notably absent from his application is any reference to either a neck injury or "cervical strain."[7] While Ciomek's medical file, complied by Dr. Maggiore and submitted to the hearing officer, mentioned various neck-related problems, it is apparent from the district hearing officer's December 13, 1993 order that the Bureau did not consider any neck-related injuries. Because Ciomek failed to assert any injury to his neck in his application for benefits, the court of common pleas did not have jurisdiction to determine whether he could participate in the workers' compensation system for cervical strain.
Moreover, because Ciomek's July 1995 motion for further allowance on his claim is still pending before the commission, the common pleas court had no jurisdiction to determine participation in the fund for claims of "mild disc narrowing of the L5-S1 disc space, early degeneration of the L4 disc, and bulging of the L4 disc causing moderate canal stenosis." The fact that the judge directed a verdict on these claims in favor of LTV based upon the absence of medical causation and Ciomek's consent does not atone for the initial error in denying LTV's motion to dismiss.
With regard to the herniated disc at L4-L5, Ciomek did not seek participation for this specific medical condition before June 20, 1997, the date he re-filed his appeal. Indeed, even though Dr. Maggiore suspected a herniated disc and proved its existence through testing in November 1994, several months after he filed his initial appeal with the common pleas court in September 1994 (Case No. 277591), Ciomek did not ask the Bureau for a further allowance for the injury in his July 1995 motion.
Based upon the rule announced above, the court of common pleas did not have jurisdiction to consider whether Ciomek could participate in the fund for the herniated disc at L4-L5 for two reasons. First, the commission previously allowed a condition, lumbar sprain, relating to the "low back" injury asserted in his claim. That herniation claim is a specific medical condition resulting from the lumbar spine injury of 1993 for which the commission may consider an additional allowance pursuant to its continuing jurisdiction under R.C. 4123.52. Dent v. ATTTechnologies, Inc. (1988), 38 Ohio St.3d 187, 189, 527 N.E.2d 821. Second, it is not, as in Grant, a new claim to buttress one previously denied; rather, it is a claim that Ciomek admits is theorized in his 1995 motion for further allowance of his low back condition.[8] Based upon the foregoing, we find that the court of common pleas lacked jurisdiction over Ciomek's claim for herniated L4-5 disc. Airtron, supra; Brooks, supra.
 SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED, TO THE PREJUDICE OF DEFENDANT-APPELLANT, BY FAILING TO ENFORCE LOCAL RULE 21.1 AND LIMIT THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES TO THOSE OPINIONS CONTAINED IN PRIOR REPORTS.
 THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED, TO THE PREJUDICE OF DEFENDANT-APPELLANT, BY FAILING TO ENFORCE ITS AUGUST 21, 1997 ORDER, REGARDING THE EXCHANGE OF EXHIBITS AND USE THEREOF, AND PRECLUDING TESTIMONY OF PLAINTIFF'S MEDICAL WITNESSES.
LTV argues that by allowing Dr. Maggiore to testify on opinions not contained in his report the judge committed prejudicial error. First, LTV argues the doctor's reports submitted under Loc.R. 21.1 contained no opinions on the causal relationship between the January 18, 1993 incident and "cervical strain, lumbosacral strain, thoracic strain, or bilateral intercostal muscle strain." Moreover, Ciomek was aware of this deficiency in May of 1996, when LTV deposed Dr. Maggiore, but failed to file a supplemental report before taking the doctor's January 1998 trial deposition. Furthermore, LTV argues, because Dr. Maggiore's and Dr. Anschuetz's medical records were not marked, identified for use, or provided to LTV as required by Judge Burnside's August 21, 1997 trial order, Ciomek should have been barred from presenting his doctors' depositions to the jury. LTV contends that because it was not advised that the doctors would use those records to refresh their recollection it was unduly prejudiced.
Ciomek asserts that LTV was fully aware of each physician's course of treatment, diagnoses of these conditions, and opinions on proximate cause of each condition. Counsel for LTV even asked its medical experts whether these same injuries could have been caused by the incident. Moreover, Ciomek claims he had produced copies of his treatment records throughout the pendency of this litigation and, therefore, LTV can claim neither surprise nor prejudice.
Loc.R. 21.1, part I.B, of the Cuyahoga County Court of Common Pleas, General Division, provides as follows:
 A party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. It is counsel's responsibility to take reasonable measures, including the procurement of supplemental reports, to insure that each report adequately sets forth the expert's opinion. * * * [A]ll supplemental reports must be supplied no later than thirty (30) days prior to trial. The report of an expert must reflect his opinions as to each issue on which the expert will testify. An expert will not be permitted to testify or provide opinions on issues not raised in his report.
This Court has previously held that a treating physician is not an expert subject to Civ. R. 26 (B) (4), which governs the scope and means of discovery of an opposing party's expert's opinions.Covington v. Sawyer (1983), 9 Ohio App.3d 40, 45, 458 N.E.2d 465;id. at paragraph two of the syllabus; Pittock v. Kaiser Found.Health Plan of Ohio (May 14, 1998, Cuyahoga App. No. 72628, unreported. Part I.C of the Loc.R. 21.1 further provides that, "[i]n the event the expert witness is a treating physician, the Court shall have the discretion to determine whether the hospital and/or office records of that physician's treatment which have been produced satisfy the requirements of a written report." A trial judge has discretion when applying Loc.R. 21.1. Walworth v. BP OilCo. (1996), 112 Ohio App.3d 340, 352, 678 N.E.2d 959, discretionary appeal not allowed, (1996), 77 Ohio St.3d 1493, 673 N.E.2d 149;
Ciomek asserts that he produced all his medical records before the January 1, 1998 deadline set forth in the judge's trial order. LTV does not claim he failed to produce his doctors' complete medical charts, nothing in the record shows that LTV moved to compel the production of these files at any time during the proceedings, and LTV does not assert that the files lacked the disputed diagnoses and opinions. We infer from this that LTV had notice of the contents of the medical records and of the opinions and diagnoses contained therein and, therefore, cannot conclude that LTV was somehow "unfairly surprised" by the content of his physicians' testimony. As such, we cannot conclude that LTV was prejudiced by Ciomek's failure to pre-mark trial deposition exhibits or his failure to formally provide copies of such documentary exhibits to LTV in light of the fact that LTV already had them in its possession. We also cannot conclude that Ciomek's failure to provide a "supplemental report" of a treating physician unduly prejudiced LTV when it possessed copies of the physician's records and the 1996 depositions. See Loc.R. 21.1, part I.C. We conclude, therefore, that the judge did not abuse her discretion when she overruled LTV's objection to Dr. Maggiore's trial deposition testimony based upon the contents of his files and the use of these files as exhibits. Pittock, supra. These assignments of error are not well taken.
FOURTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED, TO THE PREJUDICE OF DEFENDANT-APPELLANT, BY EXCLUDING TESTIMONY AND DOCUMENTARY EVIDENCE REGARDING THE TYPE AND EXTENT OF PLAINTIFF'S PRIOR LOW BACK INJURIES AND SUBSEQUENT TREATMENT AND CONDITION, AFTER PERMITTING PLAINTIFF TO TESTIFY AS TO SAME ON DIRECT EXAMINATION IN HIS CASE IN CHIEF.
LTV contends that the judge committed reversible error when he excluded from the jury's view, three medical reports from two physicians employed by the Industrial Commission who examined Ciomek in 1979 and 1991, as part of the 1976 crane incident, and in November 1993, for the claim at issue before the jury. Moreover, LTV claims, the judge improperly sustained objections to questions posed to Ciomek on the subject of those examinations even though the Ciomek opened the door to a challenge of his post-incident back and shoulder condition by denying persistent or permanent problems therefrom. It argues that the reports are records of a regularly-conducted activity under Evid.R. 803 (6) and, as public records, were admissible.
Ciomek counters that these three medical reports were inadmissible hearsay and properly excluded. If LTV had presented testimony of the physicians who authored these reports, he agrees the judge could have properly admitted testimony going to the substance of the reports. Additionally, Ciomek contends, these reports do not qualify as records of regularly conducted activity or public records subject to the hearsay exceptions. LTV, he contends, sustained no prejudice because the judge did not prevent LTV from cross-examining Ciomek about these injuries nor did it prevent LTV's experts from testifying about these same injuries.
LTV acknowledges that it sought to introduce these documents into evidence to show the existence of an earlier back injury,i.e., "to prove the truth of the matter asserted [therein]." Evid. R. 801 (C). This Court has previously held that "[t]he introduction of the entire records file of the Workers' Compensation Bureau, under the Business Records exception, is repugnant to the concept of a trial de novo in the Common Pleas Court". Paschall v.Mayfield (July 3, 1991), Cuyahoga App. 58748, unreported. The eleventh district court of appeals has also applied this principle and held that a "specialist's report, " which the claimant attempted to introduce through the custodian of records of the Bureau of Workers' Compensation, was inadmissible under the following exceptions to the hearsay rule: Evid.R. 803 (4), statements for purposes of medical diagnosis or treatment; Evid.R. 803 (6), records of regularly conducted activity; and Evid.R. 803 (8), public records and reports. Taylor v. G.M. Assembly Div. (May 27, 1994), Trumbull App. No. 93-T-4958, unreported. See, also, Golden v. George GradelCo. (Feb. 17, 1989), Lucas App. No. L-88-091.
If, indeed, these reports had been admissible, LTV introduced evidence of the existence of the 1976 and 1981 injuries to the jury through cross-examination of plaintiff and, therefore, LTV, incurred no prejudice. This assignment of error is without merit.
FIFTH ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED, TO THE PREJUDICE OF DEFENDANT-APPELLANT, BY REFUSING TO PERMIT CROSS-EXAMINATION OF THE PLAINTIFF WITH REGARD TO HIS MOTIVATION FOR REPORTING AN INJURY AND, THEREAFTER BY REFUSING TO HEAR THE TESTIMONY OF DOUGLAS NELSON, WITH RESPECT TO PLAINTIFF'S CREDIBILITY AND MOTIVATION FOR TESTIFYING AS HE DID.
Ciomek's treating physicians both agreed that if Geraldine Bennett's version of the events of December 18, 1993 was correct, the injuries claimed by Ciomek were not causally related and, thus, placed Ciomek's credibility in issue. LTV contends the judge improperly excluded the testimony of Doug Nelson, Workers' Compensation Administrator for LTV, which tended to show that Ciomek had a motivation in stating the story he did. It suggests he had personal and family reasons for seeking workers' compensation through which to cast doubt on his testimony.
Ciomek argues that his failure to apply to the company for sick and accident benefits, as Nelson would have testified — which he may not have received or which he would have had to repay out of any workers' compensation benefits — was not relevant to any question in issue. Moreover, he contends, had the judge allowed Nelson to testify, the jury would have been misled and left with the impression that he was not entitled to participate in the workers' compensation system at all.
Relevant evidence is any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Relevant evidence is generally admissible, subject to other evidentiary, statutory, and constitutional proscriptions. Evid.R. 402. However, relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury". Evid.R. 403 (A).
A judge has broad discretion when deciding whether evidence fits the definition of "relevant" under Evid.R. 401 and is otherwise admissible. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269,271, 569 N.E.2d 1056; Young v. Administrator (Aug. 6, 1998), Cuyahoga App. No. 73092, unreported. On appeal, a reviewing court limits its review of an assignment of error regarding the admission of evidence to the question whether the judge abused his discretion in allowing or disallowing its admission. Rigby,58 Ohio St.3d at 271; Walworth, 112 Ohio App.3d at 351. An "abuse of discretion" denotes more than an error of law; it suggests that the judge acted in an unreasonable, arbitrary, or unconscionable manner. Rigby,58 Ohio St.3d at 271, citing Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140;Sandler v. Gossick (1993), 87 Ohio App.3d 372,380, 622 N.E.2d 389.
This court agrees that the purported testimony of Doug Nelson was not relevant to a determination of whether Ciomek's diagnoses were causally related to the 1993 injury. Young, supra. Even if the testimony was relevant to a fact in issue, Evid.R. 403 (A) mandates its exclusion because its probative value is substantially outweighed by the danger that it would confuse the issues, mislead the jury, and lead to unfair prejudice. As Ciomek illustrates, he was under no obligation to apply for or accept the offered company benefits. LTV has claimed that this evidence would show "additional motivation" for seeking workers compensation benefits. Assuming, however, as the jury decided, his conditions resulted from a work-related injury, Ciomek is entitled by law to participate in the workers' compensation system. A person's choice to accept collateral benefits and then repay from moneys to which he is otherwise entitled cannot be reasonably construed to relate to issues of credibility. Moreover, the jury could have concluded that, even though Ciomek's diagnoses were proximately caused by a work-related injury, he would not be entitled to participate in the workers' compensation system because of the availability of these other benefits. Such a conclusion would have been contrary to law, and any probative value of this evidence was substantially outweighed by the danger of unfair prejudice, of confusion of the issues, and of misleading the jury. Evid.R. 403 (A). This assignment of error is not well taken.
Based upon the foregoing, LTV's second through sixth assignments of error are overruled. Its first assignment of error is affirmed. The judge is hereby directed to enter judgment in accordance with this opinion and order the clerk of courts to certify that judgment to the secretary of the Industrial Commission of Ohio for entry upon the Commission's record in Ciomek's claim, No. L222854-22.
It is ordered that the parties shall bear their own costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, A.J., AND LEO M. SPELLACY, J., CONCURRING IN JUDGMENTONLY.
 _________________________________ ANNE L. KILBANE, JUDGE
[1] Defense counsel asserted below that he received a copy of the motion on July 11, 1995.
[2] In a separate journal entry, the judge ordered that all documents filed in the dismissed Case No. 277591 be considered filed in the consolidated Case Nos. 277845 and 336328.
[3] See Kusa v. United Parcel Serv., Inc. (1990), 61 Ohio Misc.2d 556,559. In Kusa, the Cuyahoga County Court of Common Pleas held that, when an employer has previously filed a timely notice of appeal and the parties stipulate to dismiss the case pursuant to Civ.R. 41 (A) (1), the employer's re-filed notice of appeal is timely when filed within the time constraints of the savings statute even though the date of re-filing falls outside the sixty-day statutory requirement set forth in R.C. 4123.51.2.
[4] Specht v. BP Am., Inc. (1999), 86 Ohio St.3d 29,711 N.E.2d 225 ("We hold that the two-year notice requirement in R.C.4123.84 does not apply to claims for residual conditions and that the commission has continuing jurisdiction under R.C.4123.52 to consider these claims.")
[5] If, however, the condition has been alleged but the Bureau has specifically held its decision on participation in abeyance, i.e., if the Bureau has asserted its jurisdiction, the court of common pleas has no jurisdiction to consider that injury in a trialde novo upon appeal from a decision on a different condition or diagnosis attributed to the work-related accident. See Brooks,supra.
[6] It also follows that if a claimant alleges an injury to a particular body part in his or her application but does not provide notice of his intent to pursue compensation for any condition related to that body part at the administrative level, the court of common pleas does not have jurisdiction to consider an injury to that specific body part upon subsequent appeal from a decision from the commission regarding injuries to another body part.
[7] We also note that Ciomek did not claim a "leg injury"; he claimed "pains down his left leg," most probably attributed to or a result of his back injury.
[8] Appellee's Brief page 11, n. 2.